UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

MARK HOGAN, individually and as
guardian and on behalf of his minor
children, J.H. and I.H.; ELIZABETH M.
HOGAN, individually and as guardian and
on behalf of her minor children, J.H. and
I.H.; and DENNIS B. OKUDINANI, as
guardian and on behalf of D.O.,

                                    Plaintiffs,

              -against-                                          7:11-CV-0754 (LEK/ATB)

COUNTY OF LEWIS, NEW YORK;
DAVID VanDEWATER[1]; FRANK ROSE;
RUSSELL FALTER; KATHY WILSON;
LEANNE MOSER, in her individual and
official capacity as District Attorney of the
County of Lewis; CALEB PETZOLDT, in
his individual and official capacity as
Assistant Lewis County District Attorney;
SERGEANT RYAN LEHMAN, in his
individual and official capacity; DEPUTY
BRETT CRONEISER; and JOHN and
JANE DOES,

                                    Defendants.
_____

### MEMORANDUM-DECISION and ORDER

## I.    INTRODUCTION

        The instant case involves an ongoing property dispute and ensuing hostility between

neighbors on Hiawatha Lake in Lewis County, New York.  See generally Dkt. Nos. 1

_____

        [1] The Court notes that there is inconsistency on the docket and in the parties' filings as to the
capitalization of Defendant VanDewater's last name.  The Court presumes that the capitalization
contained in his Amended Answer to the Amended Complaint is correct.  Dkt. No. 37.  Therefore,
in the interest of consistency and of ensuring that a party is not misidentified, the Court uses
"VanDewater" throughout this Memorandum-Decision and Order and corrects any quotations in
which it might be capitalized otherwise.

("Complaint"), 4 ("Amended Complaint"). Presently before the Court are a pair of Motions for summary judgment brought by two sets of Defendants – Defendants Lewis County, Brett Croneiser, Ryan Lehman, Leanne Moser, and Caleb Petzoldt (collectively, "the Lewis County Defendants") filed their Motion for summary judgment on April 26, 2012, and Defendants Russell Falter and Kathy Wilson filed their Motion for summary judgment on May 29, 2012. Dkt. Nos. 39 ("Lewis Motion"), 43 ("Falter and Wilson Motion"). For the reasons that follow, both Motions are granted in part and denied in part.

## II.     BACKGROUND

### A. Procedural Background

Plaintiffs Mark Hogan ("Mr. Hogan") and Elizabeth M. Hogan ("Mrs. Hogan") (collectively, "Plaintiffs") originally filed their Complaint in this case on July 1, 2011. Compl. Three months later, on October 5, 2011, they filed an Amended Complaint. Am. Compl. The two Motions for summary judgment followed in the spring of 2012. Falter and Wilson Mot.; Lewis Mot. On June 18, 2012, Plaintiffs filed a Memorandum of law in opposition to the Lewis Motion, and the Lewis Defendants, in turn, filed a Reply on June 25, 2012. Dkt. Nos. 48 ("Response to Lewis"), 61 ("Lewis Reply"). On June 18, 2012, Plaintiffs also filed a Memorandum of law in opposition to the Falter and Wilson Motion, and Defendants Falter and Wilson, in turn, filed their Reply on June 25, 2012. Dkt. Nos. 53 ("Response to Falter and Wilson"), 59 ("Falter and Wilson Reply").

Plaintiffs subsequently sought leave to supplement their Amended Complaint. Dkt. No. 71. On August 23, 2012, the Honorable Andrew T. Baxter, United States Magistrate Judge, granted this request. Dkt. No. 85. Plaintiffs filed their Supplemental Complaint, which is now the operative pleading in this matter, on September 5, 2012. Dkt. No. 87 ("Supplemental Complaint"). Later in

September 2012, both the Lewis County Defendants and Defendants Falter and Wilson informed the Court that they did not intend to supplement their Motions for summary judgment in response to the alterations made in Plaintiffs' Supplemental Complaint.  Dkt. Nos. 99, 103.  The Court notes that Plaintiffs' Appeal of a discovery-related decision by Judge Baxter is also pending before the Court.  Dkt. No. 114.  Because the Court concludes that the dispute is not relevant to or necessary to the disposition of the instant Motions, the Court will address this Appeal in a separate order, and it remains pending before the Court.

### B.  Factual Background

The factual history underlying this case is extensive and convoluted.  Given the lengthy litigation history, the Court presumes the parties' familiarity with these facts.  Nevertheless, in the interests of clarity, the Court recites those facts necessary to the contextualization and resolution of the instant Motions.

Plaintiffs have owned real property at Hiawatha Lake in the Town of Greig in Lewis County, New York since roughly 1992.  Plaintiffs' Statement of Material Facts in Opposition to the Lewis Motion (Dkt. No. 50) ("Pl.'s S.M.F. - Lewis") ¶ 1.  In October 2006, some of Plaintiffs' neighbors ("the West family" or "the Wests")[2] brought an action against Plaintiffs in New York State Supreme Court.  The Lewis County Defendants' Statement of Material Fact ( Dkt. No. 39-25) ("Lewis S.M.F.");  West v. Hogan, 930 N.Y.S.2d 708 (N.Y. App. Div. 2011).  The Wests sought, *inter alia*, "a determination that they acquired title to certain property by adverse possession."  West, 930 N.Y.S.2d at 710.  A judgment was entered in the Wests' favor.  See generally id.  Many of the factual allegations alleged relate to the ongoing property dispute addressed in part by the West's

---

[2] The Wests are not and have never been a party to the instant action.

lawsuit.

### 1. Plaintiffs' Dispute with the Lewis County Defendants

On May 15, 2010, Defendant Croneiser, Deputy Sheriff with the Lewis County Sheriff's Department was dispatched to a trespass/larceny call at 7689 Hiawatha Lake Road in the Town of Greig. Lewis S.M.F. ¶ 7. Upon arriving at Hiawatha Lake Road, Defendant Croneiser met with, *inter alia*, Hiawatha Lake Road property owners, Defendants Rose and VanDewater. Id. Defendant Rose showed Defendant Croneiser photographs that allegedly captured Mr. Hogan taking sawhorses and a steel cable that belonged to Defendant Rose and were on Defendant VanDewater's property. Id. ¶¶ 8-9. Defendants Rose and VanDewater pointed out to Defendants Croneiser and Lehman what they claimed were the applicable property boundary lines. Id. ¶ 11; Pl.'s S.M.F. - Lewis ¶ 11. At this time Defendant Lehman, another officer present at the scene was in possession of a copy of a decision from West v. Hogan. Lewis S.M.F. ¶ 12; Pl.'s S.M.F. - Lewis ¶ 12. Prior to leaving Hiawatha Lake Road on May 15, 2010, Defendants Croneiser and Lehman obtained sworn statements from Defendants Rose and David VanDewater regarding the alleged incident with Mr. Hogan.[3] Lewis S.M.F. ¶ 13.

On May 29, 2010, Mr. Hogan was arrested for petit larceny. Lewis S.M.F. ¶ 14; Pl.'s S.M.F. - Lewis ¶ 14. The Lewis County Defendants also offer a signed "Property Receipt" from May 30, 2010, which purports to demonstrate that Mr. Hogan returned the sawhorses and steel cables.[4]

---

[3] Plaintiffs claim that any statements are inadmissible hearsay and deny that any larceny or trespass took place. Pl.'s S.M.F. - Lewis ¶ 13.

[4] Plaintiffs broadly dispute the significance or admissibility of the documents rather than their existence as a factual matter. The Court finds no basis to conclude that the property receipts would be inadmissible.

Compare Lewis S.M.F. ¶ 15, with Pl.'s S.M.F. - Lewis ¶ 15. Defendant Lehman told Mr. Hogan that he would receive his trespass charge when he was arraigned for the petit larceny charge. Lewis S.M.F. ¶ 16; Pl.'s S.M.F. - Lewis ¶ 16.

Plaintiffs generally contend in their Further Statement of Material Facts and in their other submissions that this arrest was exemplary of a broader pattern of concerted harassment on the part of the Lewis County Defendants and their neighbors that included a refusal to accept criminal complaints from Plaintiffs against their neighbors. See generally Pl.'s S.M.F. - Lewis; Dkt. No. 49. On July 5, 2010, Defendant Croneiser accepted a trespass complaint from Mr. Hogan, but Plaintiffs claim that they were later told that the District Attorney's Office had declared an "open season" on the Hogans and that officers had been instructed to refuse to accept the Hogans' complaints. See generally Pl.'s S.M.F. - Lewis; Dkt. No. 49. Plaintiffs further allege that some of this mistreatment stems from the fact that Plaintiffs have, on occasion, hosted D.O., an African American minor and friend of the family on their property. Pl.'s S.M.F. - Lewis ¶ 11.

The Court notes that Plaintiffs object broadly to many of the Lewis County Defendants' proffered facts as inadmissible. While the Court remains uncertain precisely what elements of each fact (or its purported evidentiary basis) are objected to and on what grounds, the Court narrowly addresses the evidentiary issues raised. Plaintiffs object to, *inter alia*, the: (1) larceny/trespass complaints; (2) sworn statements by Defendants Rose and VanDewater; (3) photographs of Mr. Hogan taking part in the alleged larceny; (4) property receipt; and (5) arrest report. While there might be a sustainable hearsay objections if the statements, comments, and photographs were offered for the truth of the matter asserted (*i.e.*, that there was a larceny or trespass), the Court finds nothing objectionable about them as they are used by the Lewis County Defendants in their Motion

(*i.e.*, as demonstrating the knowledge or mental state of the officers at the time of arrest). See FED R. EVID. 801(c).[5] Because relevant evidence such as this is admissible by default, FED R. EVID. 402, and because Plaintiffs have not otherwise raised a dispute as to these facts, the Court will consider them undisputed for purposes of resolving the instant Motions. Further, the Court finds no basis to exclude the property receipt or arrest report at this time, but does not rely on either of them for purposes of resolving the instant Motions.

### 2. *Plaintiffs' Dispute with Their Neighbors*

Defendants Falter and Wilson jointly own several lots around Hiawatha Lake and reside year round on an adjoining landlocked lot. Dkt. Nos. 43-11 ("Falter and Wilson's Statement of Material Facts") ("Falter and Wilson's S.M.F.") ¶ 1, 54 ("Plaintiffs' Statement of Material Facts in Opposition to Defendants Falter and Wilson's Motion") ("Pl's. S.M.F. - Falter and Wilson") ¶ 1. One of the lots owned by the Hogans abuts property owned by Defendants Falter and Wilson. Falter and Wilson's S.M.F. ¶ 7; Pl's. S.M.F. - Falter and Wilson ¶ 7. In 2008, Mr. Hogan brought suit in state court against a number of his neighbors including, *inter alia*, Defendants Falter and Wilson. Falter and Wilson's S.M.F. ¶ 5; Pl's. S.M.F. - Falter and Wilson ¶ 5.[6]

Defendants Falter and Wilson assert that they have no easements or interests in the Hogans' property. Falter and Wilson's S.M.F. ¶¶ 11, 13. They also claim that they have not interfered with the Hogans' property rights. See generally id. Plaintiffs, on the other hand, contend that Defendants

---

[5] For the purposes of the instant Motions, the Court finds it unnecessary to address the admissibility of these pieces of evidence for broader purposes.

[6] By including this fact in the background of this Memorandum-Decision and Order, the Court takes no position on the admissibility of any evidence of this prior matter at trial or on its relevance to the merits of the arguments advanced in the parties' submissions.

Falter and Wilson have taken part in an unceasing campaign of harassment against them and have repeatedly blocked the Hogans access to their property by blocking a right-of-way over Defendant VanDewater's property.  See generally Pl's. S.M.F. - Falter and Wilson.  Plaintiffs further allege that some of this mistreatment stems from the fact that Plaintiffs have, on occasion, hosted D.O., an African American minor and friend of the family on their property and that Defendants Falter and Wilson and their friends have directed racial slurs at D.O.  See generally id.

## III.    LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure instructs a court to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  Although "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary judgment, "summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Taggart v. Time, Inc., 924 F.2d 43, 46 (2d Cir. 1991).

The party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine issue of a material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party shows that there is no genuine dispute as to any material fact, the burden shifts to the non-moving party to demonstrate "the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Id.  This requires the non-moving party to do "more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Corp., 475 U.S. 574, 586 (1986).

At the same time, a court must resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). A court's duty in reviewing a motion for summary judgment is "carefully limited" to finding genuine disputes of fact, "not to deciding them." *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

## IV. DISCUSSION

A review of the lengthy docket and the parties' accounts of the facts serves as strong support for Robert Frost's admonition that "[g]ood fences make good neighbors."[7] Unfortunately, in this case, the difficulties of living peaceably in close proximity with others has spawned and sustained many years' worth of litigation. There is no question that tremendous hostility exists between Plaintiffs and others in their community. There also is no question that the various parties' accounts of who is to blame for the hostility and how the animosity has manifested itself, outlined *supra*, differ greatly. The questions for the Court, then, are: (1) do these differences in the parties' narratives rise to the level of genuine disputes of material fact sufficient to defeat the Motions for summary judgement; and (2) if there are no such genuine disputes, are the litany of grievances recounted by Plaintiffs both legally cognizable against Defendants and also supported by the undisputed facts on the record. The Court addresses these questions in the context of both Motions.

### A. The Lewis County Defendants' Motion

The Lewis County Defendants' Motion deals with three sets of claims by Plaintiffs: (1)

---

[7] Robert Frost, "Mending Wall," reprinted in THE NEW OXFORD BOOK OF AMERICAN VERSE 395, 395-96 (Richard Ellmann ed., 1976).

claims under 42 U.S.C. § 1983; (2) claims under 42 U.S.C. §§ 1981 and 1982 and the New York

Civil Rights Law; and (3) Mrs. Hogan's loss-of-consortium claim.  See generally Lewis. Mot.

### 1. Claims Under § 1983

As a general matter, "[t]o state a claim under Section 1983, a plaintiff must show: '(1)

actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation,

[and]; (4) damages.'"  Rahman v. Fisher, 607 F. Supp. 2d 580, 584 (S.D.N.Y. 2009) (quoting Roe v.

City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008)).

### a.  False Arrest Claim

"To establish a claim for false arrest under 42 U.S.C. § 1983, a plaintiff must show that 'the

defendant intentionally confined him without his consent and without justification.'"  Escalera v.

Lunn, 361 F.3d 737, 743 (2d Cir. 2004) (quoting Weyant v. Okst, 101 F.3d 845, 852 (2d Cir.

1996)).  "Because probable cause to arrest constitutes justification, there can be no claim for false

arrest where the arresting officer had probable cause to arrest the plaintiff."  Id.  (citing Weyant, 101

F.3d at 852).  "Probable cause to arrest exists when the arresting officer has 'knowledge or

reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person

of reasonable caution in the belief that the person to be arrested has committed or is committing a

crime.'"  Id. (quoting Weyant, 101 F.3d at 852).  Further, "[t]he question of whether or not probable

cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events

and the knowledge of the officers."  Weyant, 101 F.3d at 852 (citations omitted).

The doctrine of qualified immunity protects government officials acting in their capacity

from liability for civil damages as long as their conduct does not "violate clearly-established rights

of which an objectively reasonable official would have known."  Thomas v. Roach, 165 F.3d 137,

142 (2d Cir. 1999); see also Martinez v. Simonetti, 202 F.3d 625, 633-34 (2d Cir. 2000). However,

a defendant may still be protected by qualified immunity if she violated an individual's

constitutional rights, but "it was objectively reasonable [for her] to believe that [her] acts did not

violate these clearly established rights." Amore v. Novarro, 624 F.3d 522, 530 (2d Cir. 2010)

(quoting Cornejo v. Bell, 592 F.3d 121, 128 (2d Cir. 2010)) (internal quotation marks omitted); see

also Messerschmidt v. Millender, 132 S. Ct. 1235, 1245 (2012). As a matter of law, an officer is

entitled to qualified immunity if

> "no reasonable jury, looking at the evidence in the light most favorable to, and drawing
> all inferences most favorable to, the plaintiffs, could conclude that it was objectively
> unreasonable for the defendant[ ]" to believe that he was acting in a fashion that did not
> clearly violate an established federally protected right.

Robison v. Via, 821 F.2d 913, 921 (2d Cir. 1987) (quoting Halperin v. Kissinger, 807 F.2d 180, 189

(D.C. Cir. 1986)). The party invoking qualified immunity bears the burden of offering proof that it

was objectively reasonable for her to believe that her actions did not violate a clearly established

right and that she is entitled to qualified immunity. See Young v. Selsky, 41 F.3d 47, 54 (2d Cir.

1994).

It is well settled that an individual has a clearly established right to not be arrested or

prosecuted without probable cause. Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir.

1991). "An arresting officer is entitled to qualified immunity from a claim for unlawful arrest if

'either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b)

officers of reasonable competence could disagree on whether the probable cause test was met.'"

Wachtler v. Cnty. of Herkimer, 35 F.3d 77, 80 (2d Cir. 1994) (quoting Golino, 950 F.2d at 870;

citing Malley v. Briggs, 475 U.S. 335, 341 (1986)). "Thus, the analytically distinct test for qualified

immunity is more favorable to the officers than the one for probable cause; 'arguable probable

cause' will suffice to confer qualified immunity for the arrest." Escalera, 361 F.3d at 743.

In this case, the Lewis County Defendants argue that Plaintiffs' false arrest claims are barred because: (1) Defendants Lehman and Croneiser had probable cause to arrest Mr. Hogan; and (2) even if they did not have probable cause to arrest Mr. Hogan, they still had *arguable* probable cause to arrest him and are therefore shielded from liability by qualified immunity. See generally Lewis Mot. Plaintiffs argue in opposition that: (1) they had a right-of-way over Defendant VanDewater's property; (2) Defendants Lehman and Croneiser knew or should have known about the right-of-way; (3) Mr. Hogan behaved lawfully in order to access his right-of-way; and (4) Defendants Lehman and Croneiser knew or should have known that Mr. Hogan was lawfully entitled to behave as he did in order to access his right-of-way. Lewis Resp. at 3-9. For these reasons, Plaintiffs contend that Defendants Lehman and Croneiser did not have probable cause. Plaintiffs also argue in the alternative that there are genuine issues of material fact on which a probable cause determination would rest that are rightly reserved for a jury.

Probable cause for Mr. Hogan's arrest, contend the Lewis County Defendants, stemmed from complaints received against Mr. Hogan and surveillance photographs taken by Defendant Rose that showed Mr. Hogan stealing Defendant Rose's sawhorses and steel cable. Lewis Mot. at 8-9. "An arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity." Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 119 (2d Cir. 1995). Further, "[t]he veracity of citizen complain[an]ts who are the victims of the very crime they report to the police is assumed." Miloslavsky v. AES Eng'g Soc'y., Inc., 808 F. Supp. 351, 355 (S.D.N.Y. 1992) (citing Adams v. Williams, 407 U.S. 143, 148

11

(1972)), aff'd, 993 F.2d 1534 (2d Cir. 1993); see also Lee v. Sandberg, 136 F.3d 94, 103 (2d Cir. 1997) (quoting Miloslavsky with approval).

Despite Plaintiffs' arguments to the contrary, the Court does not find that any genuine issues of material fact persist "as to the pertinent events and the knowledge of the officers" that would preclude a grant of summary judgment on the issue of probable cause. Weyant, 101 F.3d at 852 (citations omitted). The Court notes Plaintiffs' general contentions that the complaining parties and – perhaps – the police department itself had an axe to grind with Plaintiffs. Plaintiffs refer to a "malicious campaign of harassment" by Defendants Rose and VanDewater, allege that the ill-meaning neighbors conspired with local law enforcement, and claim that "there was no legitimate basis to arrest" Mr. Hogan. Pl.'s S.M.F. ¶¶ 3-6. Further, because Defendants Lehman and Croneiser should have known that Plaintiff had a right-of-way, Plaintiffs argue, it was objectively unreasonable for them to conclude that Mr. Hogan was doing anything other than lawfully accessing his right-of-way when he took the cables and sawhorses. However, the officers had received complaints and been shown pictures of Mr. Hogan's alleged criminal activity. The Court notes Plaintiffs' evidentiary objections, but, as discussed *supra*, the Court concludes that it may consider the fact that Defendants Lehman and Croneiser had received complaints and were shown pictures.


Based on the information known to Defendants Lehman and Croneiser at the time of Mr. Hogan's arrest, the Court concludes that Defendants Lehman and Croneiser possessed probable cause to arrest. While the Court notes Plaintiffs' concerns about the motives of the complaining witnesses or possible preconceived notions on the parts of the arresting officers, these concerns are insufficient to trump the photographs, sworn complaints, and actual physical evidence

12

demonstrating that Mr. Hogan had taken the steel cables and sawhorses.[8]  Even if Mr. Hogan might

have provided an innocuous or lawful justification for his actions,[9] such explanations would not

necessarily vitiate probable cause.  Rather, once probable cause existed, the officers were not

required to explore "every theoretically plausible claim of innocence before making an arrest."

Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997); see Coons v. Casabella, 284

F.3d 437, 441 (2d Cir. 2002).  To the extent Plaintiffs might have raised genuine issues as to the

credibility of the claims of Mr. Hogan's criminal acts or as to the officers' state of mind that might

have defeated arguable probable cause, they have failed to provide sufficient factual support and

instead have relied on general, conclusory assertions.

   Therefore, the Court grants the Lewis County Defendants' Motion for summary judgment as

to the false arrest claims.[10]

---

[8] See Amore, 624 F.3d at 536 ("In deciding whether an officer's conduct was 'objectively reasonable' for purposes of qualified immunity, we look to the information possessed by the officer at the time of the arrest, but 'we do not consider the subjective intent, motives, or beliefs' of the officer." (quoting Connecticut ex rel. Blumenthal v. Crotty, 346 F.3d 84, 106 (2d Cir. 2003)).

[9] Notably, while Plaintiffs have sought to justify Mr. Hogan's moving the sawhorses and steel cables and alleged trespassing as a necessary means for him to access his right-of-way lawfully, they have provided no justification for why Mr. Hogan needed to take the sawhorses and steel cables into his possession.  Given that Mr. Hogan was initially arrested for the petit larceny and not the trespass, the fact that Plaintiffs have failed to argue that Mr. Hogan was somehow entitled not only to *remove* the alleged impediments from his path, but also to *take* them into his possession weakens any claim as to the unreasonableness of the officers' actions or the disputed facts.

[10] Because the Court finds that probable cause to arrest existed, the Court need not address the issue of qualified immunity and need only note that if Defendants Lehman and Croneiser possessed probable cause, they necessarily also possessed *arguable* probable cause.  See Betts v. Shearman, , 2013 WL 311124, at *4 (S.D.N.Y. Jan. 24, 2013) ("In the case of allegations to which probable cause is a complete defense, such as false arrest or imprisonment, the Second Circuit has defined the standard of qualified immunity as one of 'arguable probable cause.'" (quoting Cerrone v. Brown, 246 F.3d 194, 202 (2d Cir. 2001)).

b. Abuse of Process

An abuse-of-process claim can give rise to liability under § 1983.  Savino v. City of New York, 331 F.3d 63, 766-67 (2d Cir. 2003).  "In New York, a malicious abuse-of-process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process."  Cook v. Sheldon, 41 F.3d 73, 80 (2d Cir. 1994); see also PSI Metals, Inc. v. Firemen's Ins. Co. of Newark, N.J., 839 F.2d 42, 43 (2d Cir. 1988); Zarro v. Spitzer, No. 06-CV-1166, 2009 WL 3165761, at *6 (N.D.N.Y. Sept. 25, 2009).  "[T]he gist of abuse of process is the improper use of process after it is regularly issued."  Cook, 41 F.3d at 80 (quotation marks omitted).  "In New York, such wrongful purposes have included economic harm, extortion, blackmail, and retribution."  Ketchuck v. Boyer, No. 10-CV-0870, 2011 WL 5080404, at *7 (N.D.N.Y. Oct. 25, 2011) (quotation marks omitted).

In their briefing on summary judgment, neither the Lewis County Defendants nor Plaintiffs dwell on the elements of an abuse-of-process claim or argue as to the presence of malicious intent or unacceptable goals.[11]  See Lewis Mot.; Resp. to Lewis; Lewis Reply.  Rather, the Lewis County Defendants argue – and Plaintiffs contest – that Defendants Lehman and Croneiser are entitled to qualified immunity against these charges because they had probable cause to arrest Mr. Hogan.  For the reasons that follow, the Court concludes that Defendants Lehman and Croneiser are entitled to qualified immunity on the abuse-of-process claim.

---

[11] Plaintiffs contend that Defendant Moser had informed Defendant Lehman that it was "open season" on the Hogans.  Pl.'s S.M.F. - Lewis ¶ 8.  Mr. Hogan further contends that he was told by Defendant Petzoldt that the District Attorney's office would make trouble for him and his family because they had filed so many complaints and made trouble with their neighbors.  Dkt. No. 49 ¶ 9.

A government actor may be shielded from liability for civil damages if her "conduct did not violate plaintiff's clearly established rights, or if it would have been objectively reasonable for the official to believe that [her] conduct did not violate plaintiff's rights." Mandell v. Cnty. of Suffolk, 316 F.3d 368, 385 (2d Cir. 2003). "When a defendant invokes qualified immunity to support a motion for summary judgment, courts engage in a two-part inquiry: whether the facts shown 'make out a violation of a constitutional right,' and 'whether the right at issue was clearly established at the time of defendant's alleged misconduct.'" Taravella v. Town of Wolcott, 599 F.3d 129, 133 (2d Cir. 2010) (quoting and citing Pearson v. Callahan, 555 U.S. 223, 232 (2009)).[12] "A right is clearly established when the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right . . . . The unlawfulness must be apparent." Connell v. Signoracci, 153 F.3d 74, 80 (2d Cir. 1998) (citations and quotation marks omitted).

In their Motion, the Lewis County Defendants raise no arguments relating to the first prong of the qualified immunity inquiry – the violation of a constitutional right – and instead focus exclusively on refuting that any such right was "clearly established" at the time of Defendants Lehman's and Croneiser's alleged misconduct. Lewis Mot. at 13. "[T]here is no question that the right to be free from malicious abuse of process was clearly established as a general proposition long before the alleged abuse of process in the instant case." Mangino v. Inc. Vill. of Patchogue, 814 F. Supp. 2d 242, 249 (E.D.N.Y. 2011) (citation omitted). However, this does not end the Court's inquiry. "[T]he right the official is alleged to have violated must have been 'clearly

---

[12] Pearson overruled the Supreme Court's prior holding in Saucier v. Katz that courts must proceed through the two-step qualified immunity inquiry in a particular order. 533 U.S. 194, 201 (2001); see Okin v. Village of Cornwall-On-Hudson Police Dept., 577 F.3d 415, 430 (2d Cir. 2009) (explaining the relationship between Pearson and Saucier).

established' in a more particularized, and hence more relevant sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates the law." Saucier, 533 U.S. at 202 (quoting Anderson v. Creighton, 483 U.S. 635, at 640 (1987)). Courts should consider: "(1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that . . . her acts were unlawful." Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 129-30 (2d Cir. 2004) (quotations and citations omitted).

The law in the Second Circuit on whether probable cause serves as a complete defense to an abuse-of-process charge remains unsettled. See Mangino, 814 F. Supp. 2d at 250-52 (collecting cases and discussing differing opinions among the district courts). However, "[i]f judges thus disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy." Wilson v. Layne, 526 U.S. 603, 618 (1999). Based on this rationale, and presented with a factually analogous situation, the court in Mangino granted summary judgment for an officer defendant on the basis of qualified immunity. 814 F. Supp. 2d at 252 ("[G]iven the lack of clarity in this Circuit on whether the existence of probable cause for the issuance of the tickets would be a complete defense to an abuse of process claim . . . defendant Nudo is entitled to qualified immunity. Based upon language in both Second Circuit and district court cases suggesting that probable cause is a defense, although the right to be free from abuse of process was clearly established as a general proposition, it would not be clear to a reasonable officer that his conduct was unlawful."); see also Cornell v. Karpal, No. 5:09-CV-0387, 2011, WL 94063,

16

at *13 (N.D.N.Y. Jan. 11, 2011)

The Court finds the reasoning of the <u>Mangino</u> Court to be persuasive and applicable here, and therefore concludes that – because they had probable cause to arrest – Defendants Lehman and Croneiser are entitled to qualified immunity on the abuse-of-process claim.[13]  The Court therefore grants the Lewis County Defendants' Motion as to this claim.[14]

### c. Municipal Liability

Plaintiffs state claims against the Lewis County Defendants for failure to train and supervise properly Defendants Lehman and Croneiser, leading to the false arrest of Mr. Hogan and the ensuing abuse of process.  <u>See</u> Suppl. Compl. ¶¶ 83-93.  "[T]o prevail on a claim against a municipality under Section 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury."  <u>Roe v. City of Waterbury</u>, 542 F.3d 31, 36 (2d Cir. 2008).  Because the Court grants the Lewis County Defendants' Motion for summary judgment against the individual Lewis County Defendants on the

---

[13] While Plaintiffs request further discovery and seek an opportunity to question Defendants Lehman and Croneiser, the Court concludes that, based on the evidence currently on the record, probable cause existed at the time of arrest.  Therefore, while further discovery might provide useful impeachment testimony or additional information that might be proffered at trial, Plaintiffs have failed to demonstrate that it might vitiate a finding of probable cause.

[14] Qualified immunity applies to "federal causes of action but is not generally understood to protect officials from claims based on state law."  <u>Jenkins v. City of New York</u>, 478 F.3d 76, 86 (2d Cir. 2007) (emphasis omitted). However, New York common law "grant[s] government officials qualified immunity on state-law claims except where the officials' actions are undertaken in bad faith or without reasonable basis."  <u>Jones v. Parmley</u>, 465 F.3d 46, 63 (2d Cir. 2006).  Here, the Court concludes that qualified immunity under New York common law for any common law abuse of process claim "is warranted because of the same ambiguities in the law at the time of the alleged offense."  <u>Mangino</u>, 814 F. Supp. 2d at 250 n.5.

§ 1983 false arrest and abuse-of-process claims, Plaintiffs have no basis to assert municipal liability. See Escalera, 361 F.3d at 749 (holding that a county was entitled to summary judgment where the claims against the individual defendants had failed). Therefore, the Court grants the Lewis County Defendants' Motion for summary judgment on Plaintiffs' municipal liability claim.

### d. Conspiracy

Plaintiffs allege that the Lewis County Defendants also unlawfully conspired to inflict constitutional injuries against Plaintiffs. Specifically, Plaintiffs allege that the Lewis County Defendants conspired to deprive Plaintiffs of their First Amendment rights and their Fourteenth Amendment right to equal protection under the law. Resp. to Lewis at 13-16. In order to make out a conspiracy claim under § 1983, "a plaintiff must demonstrate (1) an agreement between two or more state actors or a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Graham v. City of Albany, No. 1:08-CV-892, 2009 WL 4263510, at *12 (N.D.N.Y. Nov. 23, 2009) (citing Ciambriello v. Cnty. of Nassau, 292 F.3d 307, 324-25 (2d Cir. 2002)); see also Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 119 (2d Cir. 1995) ("[A] plaintiff alleging a § 1983 conspiracy claim must prove an actual violation of constitutional rights.").

### i. First Amendment

Plaintiffs' conspiracy claims relating to First Amendment violations rely on the argument that individuals have a First Amendment right to file criminal complaints, but the Lewis County Defendants have failed to pursue the criminal complaints filed by Plaintiffs against their neighbors. Suppl. Compl. ¶ 32. Undoubtedly, Plaintiffs are correct when they state that they have a First Amendment right to file complaints with the government. Jackson v. N.Y. State, 381 F. Supp. 2d

80, 89 (N.D.N.Y. 2005) ("It is axiomatic 'that filing a criminal complaint with law enforcement officials constitutes an exercise of the First Amendment right' to petition government for the redress of grievances." (quoting Lott v. Andrews Ctr., 259 F. Supp. 2d 564, 568 (E.D. Tex. 2003)); see also Gagliardi v. Vill. of Pawling, 18 F.3d 188, 194. (2d Cir. 1994) ("The rights to complain to public officials and to seek administrative and judicial relief are protected by the First Amendment."). However, Plaintiffs err in identifying as authority for their claims cases involving official retaliation against individuals who had exercised this constitutional right. In this case, Plaintiffs have never alleged that the Lewis County Defendants retaliated against them for exercising their constitutional rights.[15] Rather, Plaintiffs merely contend that the Lewis County Defendants did not pursue the criminal complaints that Plaintiffs sought to file against their neighbors. Generally "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another," Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973), and given the lack of retaliation, the Court is unable to identify any constitutional injury to Plaintiff.

Therefore, the Court grants the Lewis County Defendants' Motion for summary judgement as it relates to the conspiracy claim arising from First Amendment violations.

ii. Fourteenth Amendment

Plaintiffs' claim of conspiracy to violate their Fourteenth Amendment rights is similarly predicated on the Louis County Defendants' alleged conspiracy to disregard his criminal complaints. Resp. to Lewis at 14-16. Plaintiffs articulate a theory of selective enforcement, arguing that they were similarly situated to their neighbors against whom they had filed criminal complaints, but that

---

[15] Plaintiffs do not, for instance, suggest (and have not provided facts suggesting) that the alleged false arrest of Mr. Hogan was retaliatory for Plaintiffs' filing complaints.

the Lewis County Defendants pursued only the criminal complaints against Mr. Hogan. Id.

The equal protection clause "is essentially a direction that all persons similarly situated should be treated alike." Brady v. Town of Colchester, 863 F.2d 205, 216 (2d Cir. 1988) (quoting City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985)). Generally, the Equal Protection Clause protects "suspect classes and fundamental interests against inequitable treatment, but other types of inequities and classifications may be justified by a showing of mere rationality." LeClair v. Saunders, 627 F.2d 606, 611 (2d Cir. 1980) (citing Dandridge v. Williams, 397 U.S. 471, 487 (1970)). However, an equal protection claim may be brought "by a 'class of one' where a plaintiff alleges that she has been 'intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" African Trade & Info. Ctr., Inc. v. Abromaitis, 294 F.3d 355, 362-63 (2d Cir.2002) (quoting Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)). A "class of one" claim "focuses on whether the official's conduct was rationally related to the accomplishment of the work of their agency." Bizzarro v. Miranda, 394 F.3d 82, 88-89 (2d Cir. 2005). However, "class of one" does not "empower federal courts to review government actions for correctness." Id. at 88. Further, "[t]he mere failure to prosecute other offenders is not a basis for finding a denial of equal protection." Aretakis v. Durivage, No. 07-CV-1273, 2009 WL 249781, at *22 (N.D.N.Y. Feb. 3, 2009) (citing LeClair, 627 F.2d at 608).

A Plaintiff may bring an equal protection claim based on a selective enforcement theory by demonstrating that "(1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." LeClair, 627 F.2d at 609-10. The discrimination must be intentional or

purposeful. Id. at 609 (citations omitted).

"To establish either claim, [a plaintiff] must show both that [she was] treated differently than other persons who were similarly situated and that such differential treatment was either without rational basis (a "class of one" claim) or was motivated by an intent to discriminate on an impermissible basis (a selective enforcement claim)."[16] Casciani v. Nesbitt, 392 F. App'x 887, 888 (2d Cir. 2011); see also Cobb v. Pozzi, 363 F.3d 89, 110 (2d Cir. 2004) (describing elements of "class of one" claim); Zahra v. Town of Southold, 48 F.3d 674, 683 (2d Cir. 1995) (describing elements of selective enforcement claim).

Determining whether parties are similarly situated is typically "a fact-intensive inquiry." Harlen Assocs. v. Inc. v. Vill. of Mineola, 273 F.3d 494, 499 n.2 (2d Cir. 2001). However, "[a] court may grant summary judgment in a defendant's favor on the basis of lack of similarity of situation . . . where no reasonable jury could find that the persons to whom the plaintiff compares [herself] are similarly situated." Clubside, Inc. v. Valentin, 468 F.3d 144, 159 (2d Cir. 2006). At the summary judgment stage, "a plaintiff must present evidence comparing herself to individuals that are 'similarly situated in all material respects.'" Sebold v. City of Middletown, No. 05 Civ. 1205, 2007 WL 2782527, at *26 (D. Conn. Sept. 21, 2007) (quoting Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000)); see also Lamothe v. Town of Oyster Bay, No. 08-CV-2078, 2012 WL 6720781, at *7 (E.D.N.Y. Dec. 27, 2012); Mangino, 739 F. Supp. 2d at 254 ("To make it past the summary judgment stage on a selective enforcement equal protection claim, it is plaintiffs'

---

[16] "While the Second Circuit has not resolved the question of whether there truly is a distinction between selective enforcement and class of one equal protection theories, courts in this circuit have repeatedly treated them as distinct theories with distinct elements of proof and have accordingly evaluated them as separate claims." Bonenfant v. Kewer, No. 05 Civ. 01508, 2007 WL 2492030, at *8 (D. Conn. Aug. 30, 2007).

burden to demonstrate similarly situated individuals who were treated differently.").

While the Court notes that Plaintiffs have alleged animus on the part of local law enforcement and have provided statements that purport to confirm this, Plaintiffs' selective enforcement claim ultimately suffers from a paucity of factual support. Nevertheless, establishing a selective enforcement or selective treatment claim under the Equal Protection Clause is certainly a daunting task. Id. at *22 n.24. In this case, the challenge presented to Plaintiffs in making out this legally and factually complex claim presents an almost insurmountable bar, given that all of the parties' briefing on this issue predated discovery. While the Court notes that the legal basis for a § 1983 conspiracy claim arising under the Equal Protection Clause is somewhat tenuous based on the present pleadings, the Court is not inclined to risk granting summary judgment prematurely based on a potentially factually-nuanced claim that has not been allowed the benefits of discovery. It is simply too early at this stage for the Court to conclude that "no reasonable jury could find that the persons to whom . . . [P]laintiff[s] compare[] [themselves] are similarly situated." Clubside, Inc., 468 F.3d at 159. Therefore, the Court denies the Lewis County Defendants' Motion for summary judgment on this claim.

In denying summary judgment on this claim, the Court also concludes that at this point it may not conclude that Defendants Moser and Petzoldt are entitled to absolute immunity. Prosecutors are protected by an absolute immunity when performing certain of their responsibilities, but only qualified immunity when performing other tasks. See, e.g., Burns v. Reed, 500 U.S. 478 (1991) (holding that a prosecutor was protected by absolute immunity for preparing and arguing a warrant application, but not for providing legal advice to investigating police officers). Thus, "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and

which occur in the course of his role as an advocate of the State, are entitled to the protections of absolute immunity." Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993). However, "absolute immunity may not apply when a prosecutor is . . . instead engaged in other tasks, say, investigative or administrative tasks." Van de Kamp v. Goldstein, 555 U.S. 335, 341 (citing Imbler v. Pachtman, 424 U.S. 409, 431 n.33 (1976)).

The determination of which sort of immunity attaches presents courts with a functional inquiry. See Kalina v. Fletcher, 522 U.S. 118, 127 (1997) ("[W]e examine the nature of the function performed, not the identity of the actor who performed it."). "[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question. The presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." Id. at 486-87 (citations omitted).

In this case, while failing to prosecute criminal complaints might have entitled Defendants Moser and Petzoldt to absolute immunity,[17] the Court cannot conclude that a prosecutor's instructions to officers not to accept or investigate a criminal complaint – as alleged by Plaintiffs – falls within the advocacy role of a prosecutor. Cf. Jackson v. Cnty. of Nassau, No. 07-CV-245, 2010 WL 335581, at *10 n.8 (E.D.N.Y. Jan. 22, 2010) ("The Court further notes that in the absence of any evidence that the Nassau County District Attorney's Office failed to investigate Jackson's complaints, the decision not to prosecute those complaints is protected by prosecutorial immunity." (citing Fields, 920 F.2d at 1119)). Based on the record currently before it, therefore, the Court

_____

[17] See, e.g., Fields v. Soloff, 920 F.2d 1114, 1119 (2d Cir. 1990) ("[U]nless a prosecutor proceeds in the clear absence of all jurisdiction, absolute immunity exists for those prosecutorial activities intimately associated with the judicial phase of the criminal process . . . . This protection extends to the decision to prosecute as well as the decision not to prosecute." (internal quotations and citations omitted)).

denies the Lewis County Defendants' Motion for summary judgment on the issue of absolute

immunity for Defendants Moser and Petzoldt as to the § 1983 conspiracy claim.

### 2. Claims Under § 1981, § 1982, and New York Civil Rights Law

Plaintiffs contend that "Defendants have violated rights guaranteed . . . under 42 U.S.C.

§§ 1981 and 1982 and § 40-c of the N.Y. Civil Rights Law in that Plaintiff D.O. was subjected to

discrimination because of race and Plaintiffs were also otherwise discriminated against in their

association and enjoyment of property because of race."  Suppl. Compl. ¶ 117.  In their Motion, the

Lewis County Defendants argue, *inter alia*, that: (1) Plaintiff D.O. is the only Plaintiff who is a

racial minority and therefore the only Plaintiff who might state a claim under these statutes, but

Plaintiffs have failed to allege that he sought to "make and enforce a contract" or had his property

rights interfered with; (2) the Lewis County Defendants had no interaction with Plaintiff D.O.; (3)

all § 1981 claims should be barred because "Section 1983 provides the exclusive remedy for

violations of the rights guaranteed under § 1981 in a claim against a state actor";[18] and (4) Plaintiffs

failed to satisfy the notice and service requirements laid out in New York Civil Rights Law §§ 40-c

and 40-d.  Lewis Mot. at 21-24.

In their Response, Plaintiffs address only the first two arguments and contend that: (1) white

plaintiffs may still state §§ 1981 and 1982 claims; and (2) "[b]y refusing Plaintiff Hogan's

complaint on behalf of Plaintiff D.O. and taking no action to prevent Defendant VanDewater from

further action against Plaintiff D.O.," the Lewis County Defendants "interfer[ed] with Plaintiff

Hogan's right to own and enjoy property based on [Plaintiffs'] association with Plaintiff D.O. who

---

[18] Carter v. City of Syracuse, 5:10-CV-690, 2012 WL 930798, at *16 (N.D.N.Y. Mar. 19, 2012) (quoting Ragin v. Newburgh Enlarged City Sch. Dist., No. 06 Civ. 2797, 2009 WL 4906111, *5 (S.D.N.Y. Dec. 17, 2009) (citations omitted)).

is of African American descent." Resp. to Lewis at 19. The Lewis County Defendants in turn

characterize this argument as "so far afield and disconnected that it is incapable of any analysis."

Lewis Reply at 9.

a. Section 1981

As a preliminary matter, the Court notes that Plaintiffs are correct in asserting that a white

plaintiff may assert a claim under § 1981. " It is well-settled that a claim of discrimination based on

an interracial relationship or association is cognizable under Section 1981." Rosenblatt v. Bivona &

Cohen, P.C., 946 F. Supp. 298, 300 (S.D.N.Y. 1996) (citations omitted) (stating that such a claim is

cognizable by a white plaintiff based on his interracial association). However, the Lewis County

Defendants are similarly correct in asserting that§ 1983, not § 1981, is the appropriate vehicle to

pursue claims against state actors. "[T]he express 'action at law' provided by § 1983 for the

'deprivation of any rights, privileges, or immunities secured by the Constitution and laws,' provides

the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the

claim is pressed against a state actor."[19] Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 735 (1989).

This exclusivity of remedy applies not only to governmental entities but also to individual state

actors. See, e.g., Whaley v. City University of New York, 555 F. Supp. 2d 381, 401 (S.D.N.Y.

2008); Roddini v. City Univ. of N.Y., No. 02 Civ. 4640, 2003 WL 435981, at *5 (S.D.N.Y. Feb. 21,

2003).

There is no question that the Lewis County Defendants are state actors. See Roddini, 2003

---

[19] See also Carter, 2012 WL 930798, at *16 (stating that "Section 1983 provides the
exclusive remedy for violations of the rights guaranteed under § 1981 in a claim against a state
actor" (quoting Ragin, 2009 WL 4906111, at *5 (citations omitted))); Whaley v. City Univ. of
N.Y., 555 F. Supp. 2d 381, 400 (S.D.N.Y. 2008)

WL 435981, at *5 ("State employment has generally been deemed sufficient to render the defendant

a 'state actor,'" as long at the acts were within the scope of employment).  Therefore, Plaintiffs'

claims against the Lewis County Defendants under § 1981 are barred by the exclusive remedial

provision of § 1983, and the Court grants the Lewis County Defendants' Motion for summary

judgement as to these claims.

b. Section 1982

Section 1982 provides that, "[a]ll citizens of the United States shall have the same right, in

every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell,

hold, and convey real and personal property." 42 U.S.C. § 1982.  Plaintiffs' claim under § 1982 is

somewhat vaguely drawn, and no party has provided substantial briefing on the legal basis for this

claim.  Nevertheless, in light of the summary judgment standard, the Court has drawn all reasonable

inferences in Plaintiffs' favor.  Reeves, 530 U.S. at 150.

As in the context of their § 1981 claim, Plaintiffs have not made any allegations relating to

interference with their rights to contract or exchange property.  Rather, Plaintiffs' claims revolve

around the issue of filing criminal complaints, discussed *supra* in the context of the § 1983

conspiracy claims.  See Part IV.A.1.d.  Plaintiffs argue that the harassment of D.O. and the Hogans

based on D.O.'s race (by parties other than the Lewis County Defendants) and the Lewis County

Defendants' refusal to pursue criminal complaints interfered with the Hogans' enjoyment of their

property.  Plaintiffs, however, cite no authority for this proposed link between the facts alleged in

the § 1983 context and the property-based regulatory regime of § 1982 (*i.e.*, that the failure to

enforce criminal laws consistently can cause loss of enjoyment of property and hence liability under

§ 1982).  Even if the facts alleged might properly support the selective enforcement claim discussed

*supra*, the Court concludes that any claim asserted under § 1982 is simply too tenuous to survive as a matter of law.

While Plaintiffs also seem to assert a claim on behalf of D.O. arising from this same refusal to accept criminal complaints and prevent the individual Defendants from harassing D.O., the Court is unable to identify any relationship between these alleged misfeasances and the property-based civil rights explicitly protected by § 1982. The alleged bigoted harassment of a child is deplorable and may give rise to other claims, but the facts alleged here are ill suited to a cause of action under § 1982 against law enforcement personnel. Therefore, the Court grants the Lewis County Defendants' Motion for summary judgment as to the claims under § 1982.

### c. New York Civil Rights Law § 40-c

"Section 40-d of the New York Civil Rights Law provides a private right of action to any person who suffers a violation of section 40-c, but further provides, '[a]t or before the commencement of any action under this section, notice thereof shall be served upon the attorney general.'" Sundaram v. Brookhaven Nat'l Labs., 424 F. Supp. 2d 545, 571 (E.D.N.Y. 2006) (quoting N.Y. CIV. RIGHTS LAW § 40-d). Further, "New York courts have consistently held that notice to the attorney general is an essential prerequisite to actions for violations of section 40-c." Id. (citing Shepard v. Frontier Commc'ns. Servs., Inc., 92 F. Supp. 2d 279, 287 (S.D.N.Y. 2000); Harvey v. NYRAC, Inc., 813 F. Supp. 206, 212 (E.D.N.Y. 1993); Giaimo & Vreeburg v. Smith, 599 N.Y.S.2d 841, 844 (App. Div. 1993); Silver v. Equitable Life Assur. Soc'y. of U.S., 563 N.Y.S.2d 78, 80 (App. Div. 1990)).

In this case, Plaintiffs have failed to contend that they served notice upon the attorney general, and a review of the docket reveals no record of any such service. See generally Dkt. While

the Court is mindful of the broad purposes of civil rights statutes in curtailing discrimination and is therefore wary of allowing a technical error to preclude a party's attempt to vindicate a perceived injustice,[20] prior interpretations of §§ 40-c and 40-d demonstrate that proper service stands as an absolute prerequisite to the commencement of such an action. See Sundaram, 424 F. Supp. 2d at 571. Therefore, the Court grants the Lewis County Defendants' Motion for summary judgment as to the claims under the New York Civil Rights Law.

### 3. Loss of Consortium

The Court notes that only a single claim – the § 1983 conspiracy claim for selective enforcement – remains against the Lewis County Defendants. The Court further notes that "[a] loss of consortium claim is a derivative action that depends on the viability of the primary cause of action" or "the underlying injury." Reed v. Medford Fire Dep't, Inc., 806 F. Supp. 2d 594, 606 (E.D.N.Y. 2011). However, this remaining cause of action under § 1983 does not support a loss-of-consortium claim. See, e.g., Hinds v. City of N.Y., 768 F. Supp. 2d 512, 516 (S.D.N.Y. 2010); Dixon v. City of N.Y., No. 03-CV-343, 2008 WL 4453201, at *21 (E.D.N.Y. Sept. 30, 2008); O'Gorman v. Holland, No. 97-CV-842, 2000 WL 134514, at *3 (S.D.N.Y. Feb. 3 2000). Therefore, the Court grants the Lewis County Defendants' Motion for summary judgment on the loss of consortium claim.

---

[20] See, e.g., Howard M. Wasserman, Iqbal, *Procedural Mismatches, and Civil Rights Litigation*, 14 LEWIS & CLARK L. REV. 157, 174 (2010) ("[P]rocedural rules should be more forgiving of civil rights claims, to ensure that substantive policies in enforcing constitutional rights against government officials are vindicated . . . . [They] should support, rather than undermine, plaintiffs who act as private attorneys general and seek to enforce the Constitution, ensure government accountability, and benefit the public at large." (citing Carl Tobias, *The Transformation of Trans-Substantivity*, 49 WASH. & LEE L. REV. 1501, 1502 (1992); Howard M. Wasserman, *Civil Rights Plaintiffs and John Doe Defendants: A Study in Section 1983 Procedure*, 25 CARDOZO L. REV. 793, 804-05 (2003)).

### B. Falter and Wilson Motion

In their Motion, Defendants Falter and Wilson argue that: (1) Plaintiffs' claim against them for interference with an easement fail as a matter of law because no easement existed between the parties; (2) Plaintiff's claim for intentional infliction of emotional distress ("IIED") is deficient as a matter of law; (3) Plaintiffs' claim for private nuisance must be dismissed as a matter of law because Defendants Falter and Wilson did not interfere with Plaintiffs' property; and (4) Plaintiffs' claims for negligence and/or gross negligence must fail as a matter of law because Defendants Falter and Wilson owed no duty to Plaintiffs. <u>See generally</u> Falter and Wilson Mot. Plaintiffs respond that questions of material fact persist on each of these issues, making summary judgment inappropriate. <u>See generally</u> Resp. to Falter and Wilson. Plaintiffs further contend that: (1) even if the Court were to grant Defendants Falter and Wilson's Motion, Defendants Falter and Wilson could still not be dismissed because Plaintiffs' claims under the New York Civil Rights Law and §§ 1981 and 1982 remain; and (2) Plaintiffs should not be sanctioned.[21] <u>Id.</u> at 12-13. In their Reply, Defendants Falter and Wilson argue that: (1) Plaintiffs' civil rights claims clearly were not directed at Defendants Falter and Wilson, so they were not required to move on these claims; and (2) Plaintiffs should be sanctioned. <u>See generally</u> Falter and Wilson Reply ¶¶ 30-35.

#### 1. Interference with Easement

In their Motion, Defendants Falter and Wilson argue that their land was not encumbered with any easement that Plaintiffs had a right to use and that for an action for interference with an easement in New York to survive, there must be an "established covenant or agreement between the

---

[21] While Defendants Falter and Wilson did not explicitly argue for sanctions in their Memorandum of Law, the issue had been raised in other supporting documents.

parties." Falter and Wilson Mot. at 10 (citing N.Y. REAL PROP. ACTS. LAW § 2001). They further

argue that Plaintiffs' possession of an easement over another neighbor's property is "irrelevant to"

Defendants Falter and Wilson. Falter and Wilson Mot. at 10. Plaintiffs respond that: (1) they have

an easement over Defendant VanDewater's property; (2) Defendants Falter and Wilson have

interfered with this easement; and (3) "[t]here is very little case law regarding this issue, but the case

law that does exist agrees that dominant tenement holders have a cause of action against third

parties which interfere with the dominant tenement's right to an easement." Resp. to Falter and

Wilson at 4.

   In support of this contention, Plaintiffs offer a citation to the Restatement of Property for the

proposition that an easement grants a holder rights against interference by third parties. See id.

Plaintiffs, however, offer no support for the existence of a claim *for damages* against a third party

for interfering with an easement.[22] They cite only to a single Seventh Circuit case applying

Wisconsin law that involved the ability of an easement holder to seek *injunctive relief* against

parties who were preventing access to the easement.

   Defendants Falter and Wilson reply – with no citation to authority other than a general

reference to the New York Real Property Actions and Proceedings Law – that: (1) an action for

interference with an easement requires an established covenant or agreement between the parties;

and (2) Defendants Falter and Wilson's alleged interference with Plaintiffs' easement were trivial

and insufficient to support a claim. See Falter and Wilson Reply ¶¶ 11-15.

   Because the Court is unable to identify any New York State cause of action for damages

---

[22] Plaintiffs' Supplemental Complaint clearly seeks damages and makes no mention of injunctive relief or an ongoing injury that might be remedied by injunction. See generally Suppl. Compl.

against a third party for interference with easement that might be applicable to the facts of this case, the Court grants Defendants Falter and Wilson's Motion for summary judgment as to this claim.

### 2. IIED

In order to state a claim for IIED in New York, a plaintiff must show: "(1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." Stuto v. Fleishman, 164 F.3d 820, 827 (2d Cir. 1999). The standard for stating a valid claim is "rigorous, and difficult to satisfy" because the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Howell v. N.Y. Post Co., 81 N.Y.2d 115, 122 (1993) (internal quotation marks and citation omitted). Further, IIED is a "highly disfavored claim[ ] under New York law." Williams v. City of Mount Vernon, 428 F. Supp. 2d 146, 160 (S.D.N.Y. 2006) (internal quotation marks and citation omitted); see also Seltzer v Bayer, 709 N.Y.S.2d 21, 23 (App. Div. 2000) ("This threshold of outrageousness is so difficult to reach that, of the intentional infliction of emotional distress claims considered by the Court of Appeals, every one has failed because the alleged conduct was not sufficiently outrageous." (citation and internal quotation marks omitted)).

Nevertheless, "[c]ourts have held that continuous and coercive harassment can establish an IIED cause of action." Neufeld v. Neufeld, 910 F. Supp. 977, 984 (S.D.N.Y. 1996) (citing Alexander v. Unification Church of America, 634 F.2d 673, 678-79 (2d Cir. 1980) (filing of harassing lawsuits, constant surveillance, patrolling of plaintiffs' homes); Green v. Fischbein Olivieri Rozenholc & Badillo, 507 N.Y.S.2d 148 (App. Div. 1986) (baseless eviction proceedings

against plaintiff-tenant by landlord, disruption in services, deterioration of living conditions, interference with mails, verbal abuse of plaintiff and his guests). But see Gay v. Carlson, 60 F.3d 83, 89 (2d Cir. 1995) (finding that the plaintiff had not established an IIED claim where "[a]ll that plaintiff alleges that any of the defendants has done is lodge official complaints about plaintiff's conduct or discuss the basis of those complaints with others").

In arguing that Plaintiffs' IIED claims fail as a matter of law, Defendants Falter and Wilson argue, *inter alia*, that: (1) Plaintiffs have not alleged conduct that is sufficiently outrageous; and (2) Plaintiffs have not provided medical evidence and therefore will not be able to allege harm beyond hurt feelings.[23]

Taking Defendants Falter and Wilson's second argument first, the Court concludes that Plaintiffs are correct in protesting that this Motion was brought prior to discovery, rendering a debate over the lack or quality of medical evidence premature. Defendants Falter and Wilson elected to file a Motion for summary judgment prior to discovery, which precludes them from obtaining summary judgment (at least at this point) based on lack of expert testimony. While not yet supported by facts on the record, Plaintiff *has* referred to damages caused by Defendants Falter and Wilson's allegedly outrageous conduct.[24] See Dkt. No. 52 ¶¶ 22-23. The Court observes that filing, propr to discovery, a Motion seeking judgment as a matter of law because – in essence –

_____

[23] In the interests of judicial economy, Court does not fully address each argument raised in opposition to the IIED claim.

[24] Because the Court concludes that – granting all reasonable inference in Plaintiffs' favor – they have raised allegations of damages that might be supported by objective medical evidence, the Court need not address Plaintiffs' contention that they would not need to adduce such evidence in order to succeed on the merits after discovery. See Allam v. Meyers, No. 09 C 10580, 2012 WL 5844094, at *3 (S.D.N.Y. Nov. 19, 2012) (discussing the need for "objective medical evidence" in IIED cases).

discovery is lacking strikes the Court as an inherently vain endeavor.[25]

The Court does, however, find Defendants Falter and Wilson's first argument – that the alleged conduct was neither extreme nor outrageous as a matter of law – convincing. While the Court is mindful that an ongoing pattern of harassing actions that might not individually be extreme and outrageous may reach the IIED threshold when considered holistically, see Neufeld, 910 F. Supp. at 984, the Court concludes that Plaintiffs allegations against Defendants Falter and Wilson are still deficient as a matter of law.

In so holding, the Court relies largely on Plaintiffs' identification of specific parties and the specific acts that they allegedly committed. Drawing all reasonable inferences in favor of Plaintiffs and noting the early stage at which the instant Motion was brought, the Court concludes that the facts alleged against Defendants Falter and Wilson – as opposed to Defendant VanDewater or Defendants generally – even if taken as true, are insufficient to make out an IIED claim under the ongoing pattern theory.

Plaintiffs allege that Defendants Falter and Wilson: (1) verbally harassed them on many occasions; (2) shot off fireworks too close to Plaintiffs' cabin during the summer months of 2007-

---

[25] In support of their argument that summary judgment is properly granted on this claim, Defendants Falter and Wilson cite Christenson v Gutman, 671 N.Y.S.2d 835 (App. Div. 1998), with a parenthetical explanation that there "plaintiffs' failure to submit medical evidence or the need to seek medical attention resulted in the conclusory or speculative allegations that were properly dismissed on summary judgment." Falter and Wilson Reply ¶ 21. In fact, the court in Christenson did not grant summary judgement on this claim. Rather, that court denied as futile a motion to amend to state an IIED claim. Granted, in effect, both outcomes amount to a judgment on the legal merits of the claim. Nevertheless, the Court concludes that in this case, the preemptive summary judgment and sparse record do not dictate the same result based on the lack of medical evidence or allegations of medical treatment. However, as discussed infra, the Court grants Defendants Falter and Wilson's request for summary judgment on the IIED claim based on the lack of sufficiently outrageous conduct.

2011; (3) chased Plaintiffs on multiple occasions in cars, honking and veering dangerously close to them; (4) interfered with Plaintiffs' right-of-way over Defendant VanDewater's land; (5) made false complaints against Plaintiffs to the Lewis County Defendants; (6) "participated in and/or condoned" other actions taken by Defendants VanDewater and Rose; and that Defendant Falter "participated in the unlawful imprisonment of [Mr. Hogan] and [his] children, which is the subject of a New York state action currently being litigated."[26]  See generally Dkt. No. 52.

The conduct alleged on the part of Defendants Falter and Wilson was certainly unneighborly but even if it had been tortious, or even criminal,[27] the Court is unable to conclude that it meets the exceedingly high threshold that New York courts have established for IIED claims.  See Seltzer, 709 N.Y.S.2d at 23 ("Noxious and deplorable though this conduct may be, these incidents do not rise to the level of outrageousness or the kind of 'deliberate and malicious campaign of harassment or intimidation' that can survive a motion for summary judgment under controlling Court of Appeals precedent." (quoting Nader v Gen. Motors Corp., 25 N.Y.2d 560, 569 (1970)).  Indeed, Plaintiffs' allegations seek to augment specific claims against Defendants Falter and Wilson with claims against other Defendants and to lump claims of harm to the Hogans with claims of harm to D.O. and other guests.  See generally Suppl. Compl.; Dkt. No. 52.  Even taken as a whole, these allegations fail to reach the level of "outrageous."[28]  Accordingly, Defendants Falter and Wilson's Motion for

----

[26] In his Affidavit, Mr. Hogan provides no further factual details relating to this allegation. See Dkt. No. 52.

[27] In so noting, the Court takes no position on the merits of any potential criminal or tort claims against Defendants Falter and Wilson not presently before the Court.

[28] The Court notes that its holding on this issue is unaffected by the absence of discovery in this case.  Plaintiffs allegations of outrageous conduct arise entirely from their own personal experiences, experiences that they (rather than Defendants Falter and Wilson) are equipped to

summary judgment is granted with respect to the IIED claims.

### 3. Private Nuisance

Where the Court concludes that many of Plaintiffs' stated causes of action (e.g., the IIED claim, the §§ 1981 and 1982 claims) are ill suited to the facts alleged,[29] the Court finds that Plaintiffs' claim for private nuisance is a proper method for characterizing the harms that Plaintiffs allegedly have suffered. The Court, therefore, finds that this claim is not deficient as a matter of law.

The elements of a claim for private nuisance are: "(1) an interference substantial in nature, (2) intentional in origin, (3) unreasonable in character, (4) with a person's property right to use and enjoy land, (5) caused by another's conduct in acting or failure to act." Copart Indus. v Consol. Edison Co. of N.Y., 41 N.Y. 2d 564, 570 (1977) (citation omitted). However, a plaintiff may not maintain a claim for nuisance where the "injury complained of was to the same property on which the nuisance was alleged to exist." Rose v. Grumman Aerospace Corp., 602 N.Y.S.2d 34 (App. Div. 1993) (citation omitted).

While Defendants Falter and Wilson correctly state that "[l]andowners in an organized

---

recount to the Court. That Plaintiffs have failed to allege facts that – even if true – would amount to outrageous conduct, therefore, cannot fairly be attributed to a fault in the flow of information that discovery would have facilitated.

[29] Defendants Falter and Wilson argue that in opposing their Motion for summary judgment on this claim, Plaintiffs "regurgitate their argument on their interference with easement claim." Falter and Wilson Reply ¶ 25. While the Court notes that the two arguments and factual predicates are analogous, the Court concludes that they may appropriately be pleaded in the context of a private nuisance claim, whereas, for the reasons stated *supra*, they are not in the context of a claim for interference with easement.

community must tolerate some damage, annoyance, and inconvenience from each other,"[30] the Court cannot conclude as a matter of law that the conduct alleged by Plaintiffs fell into such a category of quotidian peccadilloes. Plaintiffs have alleged that Defendants Falter and Wilson essentially made it impossible for them to access their cabin and their property by parking cars in front of a right-of-way and otherwise impeding travel. Such blockage has been held – at the summary judgment stage – to amount to the sort of substantial, unreasonable conduct that might support a private nuisance claim. Aristides v Foster, 901 N.Y.S.2d 688 (App. Div. 2010). Not all of Plaintiffs' allegations of foul language or intemperate behavior constitute a substantial and "unreasonable interference," but because Plaintiffs allege that Defendants Falter and Wilson have *physically prevented* Plaintiffs from using and enjoying their property, the Court denies summary judgment as to this claim.

### 4. Negligence and Gross Negligence

It is hornbook law that a plaintiff asserting a negligence claim must prove that "(1) the defendant owed the plaintiff a cognizable duty of care as a matter of law; (2) the defendant breached that duty; and (3) plaintiff suffered damage as a proximate result of that breach." Curley v. AMR Corp., 153 F.3d 5, 13 (2d Cir. 1998). "The existence of a common-law duty in a negligence case is a threshold question of law for the court." Morgan Stanley & Co. Inc. v. JP Morgan Chase Bank, N.A., 645 F. Supp. 2d 248, 255 (S.D.N.Y. 2009) (citing Hayes v. Riverbend Housing Co., Inc., 836 N.Y.S.2d 589, 590 (App. Div. 2007)); see also Williams v. Utica College of Syracuse Univ., 453 F.3d 112, 116 (2d Cir. 2006) ("Under New York law, the question of the existence of a duty is a question of law that is to be answered by the Court of Appeals in a broad, categorical fashion" (internal quotation marks omitted)).

---

[30] Falter and Wilson Mot. at 16 (citing New York Pattern Jury Instructions 3:16).

In this case, Defendants Falter and Wilson argue that they owed no such duty to Plaintiffs. Falter and Wilson Mot. at 17-18. Plaintiffs counter that Defendants Falter and Wilson owe a duty to Plaintiffs as adjoining landowners. Accordingly, they claim, "[t]he only question that is relevant is whether Defendants Falter and Wilson have breached their duty to the Plaintiffs, and whether that breach is the proximate cause of harm to the Plaintiffs." Resp. to Falter and Wilson at 11. Further, Plaintiffs claim that factual issues persist that should bar summary judgment on this claim.

The Court finds Plaintiffs arguments wholly unavailing and grants Defendants Falter and Wilson's Motion for summary judgment as to the negligence and gross negligence claims. The Court is unaware of any general duty that one neighbor owes another that has allegedly been breached in this case. While there certainly are duties relating to the physical damage to property or natural resources, any such duties are irrelevant to the claims at bar. As a result, there can be no factual issue as to this claim, and summary judgment is properly granted.

### 5. *Remaining Claims Against Falter and Wilson*

In their Response, Plaintiffs correctly observe that there are claims remaining against Defendants Falter and Wilson beyond those addressed in the summary judgment Motion. Resp. to Falter and Wilson at 12. In their Reply, the Defendants Falter and Wilson argue that "[t]hese causes of action were not addressed in defendants' initial moving papers because they required no response." Falter and Wilson Reply ¶ 31. Their argument, at its essence, is that these claims are incredibly weak and there was no reason for Defendants Falter and Wilson to think that these claims had been brought against them; therefore, they did not need to move for summary judgment specifically as to these claims. However, the Fourteenth, Fifteenth, and Sixteenth causes of action

in Plaintiffs' Supplemental Complaint are asserted generally against "Defendants."[31]  That

Defendants Falter and Wilson found any allegations against them under these claims to be weak or

unsupportable as a matter of law does not automatically entitle them to a *sua sponte* judgment as a

matter of law.  Therefore, the Court declines to grant Defendants Falter and Wilson summary

judgment on these claims at this time.[32]

## V.      CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Lewis County Defendants' Motion (Dkt. No. 39) for summary

judgment is **GRANTED in part** and **DENIED in part** consistent with this Memorandum-Decision

and Order; and it is further

**ORDERED**, that all claims against the Lewis County Defendants except the conspiracy

claim arising under 42 U.S.C. § 1983 for violation of Plaintiffs' rights under the Equal Protection

Clause of the Fourteenth Amendment are **DISMISSED**; and it is further

**ORDERED**, that Defendants Falter and Wilson's Motion (Dkt. No. 43) for summary

judgment is **GRANTED in part** and **DENIED in part** consistent with this Memorandum-Decision

and Order; and it further

**ORDERED**, that all claims against Defendants Falter and Wilson except the claims for

private nuisance and for violation of Plaintiffs' civil rights (the Fourteenth, Fifteenth, and Sixteenth

---

[31] The same formulation is also used in the Amended Complaint.

[32] The Court notes that Defendants Falter and Wilson request that "the Court impose appropriate sanctions, under its inherent powers under Rule 11, to deter [P]laintiffs from the conduct complained of in [D]efendants' moving papers."  Falter and Wilson Reply ¶ 35.  Based on its review of the record, he Court declines to exercise this discretionary authority and impose sanctions at this time.

Causes of Action) are **DISMISSED**; and is further

ORDERED, that the Clerk of the Court serve a copy of this Memorandum-Decision and

Order on all parties.

**IT IS SO ORDERED**.

DATED:      March 08, 2013
                Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge