UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

MARK HOGAN, individually and as
guardian and on behalf of his minor
children, J.H. and I.H.; ELIZABETH M.
HOGAN, individually and as guardian and
on behalf of her minor children, J.H. and
I.H.; and DENNIS B. OKUDINANI, as
guardian and on behalf of D.O.,

                    Plaintiffs,

    -against-                                   7:11-CV-0754 (LEK/ATB)

COUNTY OF LEWIS, NEW YORK;
DAVID VanDEWATER; FRANK ROSE;
RUSSELL FALTER; KATHY WILSON;
LEANNE MOSER, in her individual and
official capacity as District Attorney of the
County of Lewis; CALEB PETZOLDT, in
his individual and official capacity as
Assistant Lewis County District Attorney;
SERGEANT RYAN LEHMAN, in his
individual and official capacity; DEPUTY
BRETT CRONEISER; and JOHN and
JANE DOES,

                    Defendants.

## MEMORANDUM-DECISION and ORDER

**I.    INTRODUCTION**

Plaintiffs, dissatisfied with the Court's March 8, 2013, Memorandum-Decision and Order granting partial summary judgment for certain Defendants, have filed two Motions for reconsideration. See Dkt. Nos. 125 ("March Order"); 126 ("First Motion"); 126-3 ("First Memorandum"); 131 ("Second Motion"); 131-1 ("Second Memorandum"). Plaintiffs also seek leave to amend so as to add a claim under 42 U.S.C. § 1983. See Second Mot.; Dkt. Nos. 87

("Supplemental Complaint"); 131-3 ("Proposed Amended Complaint"). For the reasons that follow, the Motions are granted in part and denied in part.

## II. BACKGROUND

The parties are presumed to be familiar with the background of this case. For a complete statement of Plaintiffs' allegations and claims, reference is made to the Supplemental Complaint or March Order.

The March Order dismissed a number of claims against Defendants Sergeant Ryan Lehman ("Lehman"); Deputy Brett Croneiser ("Croneiser"); County of Lewis ("Lewis County") (collectively with Lehman and Croneiser, the "Lewis County Defendants"); Russell Falter ("Falter"); and Kathy Wilson ("Wilson"). See generally Mar. Order. Plaintiffs filed the First Motion ten days after the issuance of the March Order. Dkt. No. 126-3 ("First Memorandum") at 1. They filed the Second Motion on May 10, 2013. Defendants have responded to the Motions and Plaintiffs have replied. See Dkt. Nos. 128 ("First Lewis County Response"); 136-1 ("Second Lewis County Response"); 127-1 ("Falter and Wilson Response"); 140-1 ("Reply").

## III. MOTION FOR RECONSIDERATION

### A. Legal Standard

The standard for granting a motion for reconsideration is strict. Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). A motion for reconsideration "should not be granted where the moving party seeks solely to relitigate an issue already decided." Id. Furthermore, a motion for reconsideration is not to be used for "presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" Sequa Corp. v. GBJ Corp., 156 F.3d 136, 144 (2d Cir. 1998). "Generally, the prevailing rule in the Northern District 'recognizes only

three possible grounds upon which motions for reconsideration may be granted; they are (1) an intervening change in controlling law, (2) the availability of new evidence not previously available, or (3) the need to correct a clear error of law or prevent manifest injustice.'" Sumner v. McCall, 103 F. Supp. 2d 555, 558 (N.D.N.Y. 2000) (Kahn, J.) (quoting In re C-TC 9th Ave. P'ship, 182 B.R. 1, 3 (N.D.N.Y. 1995)).

### B. Claims Against Falter and Wilson

#### *1. Interference with Easement*

The Court dismissed Plaintiffs' interference with easement claim against Defendants Falter and Wilson because of: (1) the nonexistence of a damages cause of action for third-party interference with easement; and (2) Plaintiffs' failure to allege any harm that could be remedied by injunctive relief. Mar. Order at 30-31. Plaintiffs now argue that both of those determinations were erroneous. See First Mem. at 8-10.

##### a. Damages

In the March Order, the Court noted an inability "to find any New York State cause of action for damages against a third party for interference with easement that might be applicable to the facts of this case." Mar. Order at 10-11. Plaintiffs now assert that they "have identified the existence of liability of third parties for an interference with easement cause of action" but cite to no authority for this proposition. First Mem. at 9. Nor does Plaintiffs' recitation of the entirely unremarkable propositions that: (1) a cause of action exists against subservient landholders who interfere with an easement on their land; and (2) a habeas claim may be raised even where there is a dearth of case law supporting the claim, indicate that the Court's failure to recognize a heretofore unrecognized third-party interference with easement cause of action was clearly erroneous. See First Mem. at 9.

3

The First Motion is therefore denied with respect to the interference with easement damages claim.

      b. Injunctive Relief

 Plaintiffs argue that, even if third party interference with easement does not give rise to a damages cause of action, their claim should not have been dismissed because they alleged ongoing harm that can remedied by injunctive relief: physical and psychological harm and future attorneys fees. See First Mem. at 8 (citing Supplemental Compl. ¶ 34(g)). But none of these harms "might be remedied by injunction." Mar. Order at 30. While Plaintiffs may be suffering ongoing physical and psychological harm, as well as legal costs, from Defendants' past actions, only conduct, not injury,[1] can be enjoined. Plaintiffs have not alleged any specific continuing conduct by Falter and Wilson. While the Supplemental Complaint conclusorily alleges that Falter and Wilson have "continued to obstruct" Plaintiffs' right of way, the only specific alleged act of Falter and Wilson's is a summer 2010 blocking of the right of way—an incident that occurred more than two years before the filing of the Supplemental Complaint. See Supplemental Compl. ¶¶ 22, 29. Plaintiffs have not pointed to any other ongoing conduct. See generally id.; First Mem.[2] The First Motion is therefore denied

---

[1] The Court cannot, of course, order Plaintiffs' psychological and physical harm to cease or order Plaintiffs' attorneys to cease billing Plaintiffs.

[2] The March Order noted that, with the respect to the interference with easement claim, the Supplemental Complaint "clearly seeks damages and makes no mention of injunctive relief." Mar. Order at 30. This determination was premised on explicit language in the interference with easement portion of the Supplemental Complaint stating that Plaintiffs were "entitled to compensation" and the omission of any corresponding mention of injunctive relief. Supplemental Compl. ¶ 40. Plaintiffs now point out that the Supplemental Complaint did seek injunctive relief in a generic concluding paragraph: an order enjoining all Defendants, including Falter and Wilson, from "further violat[ing] Plaintiffs' rights" and a declaratory judgment finding that Falter and Wilson had violated Plaintiffs' rights. See First Mem. at 8; Supplemental Compl. at 21. But this is of no consequence, because even if the Court's determination that Plaintiffs were not seeking injunctive relief was erroneous, the determination that Plaintiffs failed to allege injunction-remediable harm was not.

4

with respect to the interference with easement injunctive relief claim.

### 2. *Intentional Infliction of Emotional Distress Claim*

The March Order dismissed Plaintiffs' intentional infliction of emotional distress ("IIED") claim against Falter and Wilson, finding that, although the alleged conduct "was certainly unneighborly" and might rise to the level of a tort or criminal conduct, it was insufficient to "meet[] the exceedingly high [extremity and outrageousness] threshold that New York courts have established for IIED claims." Mar. Order at 34. Plaintiffs argue that this finding was erroneous because: (1) it was in keeping with the "exponential[]" growth of the IIED threshold that the Court should "curtail"; (2) it was "a finding of fact for a jury, and should not be decided as a matter of law"; and (3) the alleged conduct, which put Plaintiffs in a reasonable apprehension of physical injury, was sufficiently extreme and outrageous. First Mot. at 10-11.

None of these arguments merits reconsideration of the March Order. The harmony of the March Order with other decisions in this circuit weighs against, not in favor of, a determination that it was clearly erroneous. Extremity and outrageousness may be, and often are, resolved as a matter of law. See, e.g., Biberaj v. Pritchard Indus., Inc., 859 F. Supp. 2d 549, 557, 564-65 (S.D.N.Y. 2012); Kirwin v. N.Y.S. Office of Mental Health, 665 F. Supp. 1034, 1040 (E.D.N.Y. 1987); Seltzer v. Bayer, 709 N.Y.S.2d 21, 23 (App. Div. 2001); Owen v. Leventritt, 571 N.Y.S.2d 25, 25 (App. Div. 1991). Finally, the Court fully considered the potentially physically injurious nature of the conduct at issue in determining that it was insufficiently extreme and outrageous. See Mar. Order at 33-34. Plaintiffs have offered no support for their contention that this determination was erroneous. See generally First Mem. The First Motion, to the extent it seeks reconsideration of the dismissal of the IIED claim against Falter and Wilson, is therefore denied.

5

### 3. *Loss of Consortium.*

The March Order dismissed "all" of Plaintiffs' claims against Defendants Falter and Wilson except for their private nuisance claim and three federal civil rights claims. Mar. Order at 38-39. Thus, Plaintiffs' loss of consortium claim, pleaded against all Defendants, was dismissed against Falter and Wilson. See id. However, Falter and Wilson did not seek summary judgment on this claim and the March Order did not discuss this claim with respect to Falter and Wilson. See generally Dkt. No. 43-10; Mar. Order.

A loss of consortium claim is a derivative claim that must be dismissed where all underlying claims have been dismissed. See Mohamed v. Marriot Int'l, Inc., 905 F. Supp. 141, 158 (S.D.N.Y.1995). The March Order properly dismissed Plaintiffs' loss of consortium claim against the Lewis County Defendants: the only non-dismissed claim against those Defendants was a federal civil rights claim, which cannot support a loss of consortium of claim. See Mar. Order at 28. Plaintiffs now argue that, because their private nuisance claim against Falter and Wilson was not dismissed, the loss of consortium claim against Falter and Wilson should also have survived. First Mem. at 11. Plaintiffs are correct. Torts, unlike federal civil rights claims, support a loss of consortium claim. See Dixon v. City of New York, No. 03-CV-343, 2008 WL 4453201, at *21 (E.D.N.Y. Sept. 30, 2008). Thus, because the private nuisance claim survived, it was error to *sua sponte* dismiss the loss of consortium claim.[3] The First Motion, to the extent is seeks reinstatement of the loss of consortium claim against Falter and Wilson, is granted.

### C. Claims Against Lewis County Defendants

---

[3] Falter and Wilson have not argued that Plaintiffs' First Motion should be denied with respect to the loss of consortium claim. See generally Falter and Wilson Resp.

6

*1. First Amendment Conspiracy*

The March Order dismissed Plaintiffs' § 1983 claim for conspiracy to deprive Plaintiffs of their First Amendment right to petition. Mar. Order at 18-19. The Court noted that: (1) Plaintiffs had not alleged that they had been retaliated against for exercising their right to file a criminal complaint; and (2) there is no First Amendment claim for the failure to pursue or prosecute criminal complaints. Mar. Order at 18-19. Plaintiffs now assert that their First Amendment Claim was based on the Lewis County and other Defendants' failure to "accept or file" Plaintiffs' complaints of criminal activity. First Mem. at 7. It is well established that retaliation for, or active prevention of, the exercise of the right to file such complaints is actionable. See Meyer v. Bd. of Cnty. Com'rs of Harper County, 482 F.3d 1232 (10th Cir. 2007) (finding that jailhouse commitment of plaintiff that prevented him from complaining about physical assault was actionable); Hilton v. City of Wheeling, 209 F.3d 1005, 1007 (7th Cir. 2000); United States v. Hylton, 710 F.2d 1106, 1111 & n.6 (9th Cir. 1983). However, Plaintiffs have pointed to no authority regarding the existence or contours of a claim premised on the mere failure to accept or file such complaints. Cf. Neal v. Hauf, No. CIV-11-232, 2011 WL 3652693, at *2 (W.D. Okla. Aug. 19, 2011) ("[T]he refusal to accept, file or mail a report request, for criminal prosecution or criminal complaint does not constitute a violation of Plaintiffs' First Amendment right to petition the government for redress of grievances."). Moreover, even if there were such a claim, Plaintiffs appear to assert that it encompasses the right to file complaints in certain mediums: they acknowledge that certain of their complaints were accepted but suggest that they were entitled to formally file written complaints. Compare Dkt. No. 49 ¶¶ 10-11 (noting that Mr. Hogan was able to call the Lewis County Sheriff's Office ("Sheriff's Office") and make a "complaint"), with id. ¶ 16 (noting that Defendants would not permit Plaintiff to "file a

7

complaint"), and id. ¶ 20 (noting that the Lewis County Defendants "failed to file" a number of other complaints).[4] Again, Plaintiffs have offered no authority for the existence of a First Amendment claim premised on the right to have complaints accepted or filed in a particular manner or medium. Cf. Hilton v. City of Wheeling, 209 F.3d 1005, 1007 (7th Cir. 2000) ("Nor . . . does the right to petition for redress of grievances imply a duty of the government to make every government employee a petition receiver."). The First Motion, to the extent it seeks reinstatement of the First Amendment conspiracy claim, is denied.

### 3. False Arrest

The March Order determined that Lehman and Croneiser had probable cause to arrest Mr. Hogan for petit larceny and therefore dismissed Plaintiffs' § 1983 claims for false arrest. Mar. Order at 9-13. The First Motion offers no new evidence or intervening authority. Rather, it argues that the Court's determination was clearly erroneous because: (1) Mr. Hogan acted lawfully in taking the items impeding the right of way into his possession, because the right of way had been impeded previously; (2) Mr. Hogan acted lawfully, because he took the items with the intent to return them; (3) Lehman and Croneiser knew that Mr. Hogan had a right of way that had been previously impeded and therefore knew that he had acted lawfully; and (4) Lehman and Croneiser should have known that Plaintiff intended to return the items and therefore that he had acted lawfully. First Mem. at 2-6.

Plaintiffs simply rehash already raised and rejected arguments. See Dkt. No. 48 at 3-9; Mar.

---

[4] Plaintiffs' allegations regarding the refusal to accept their complaints lack any factual detail and are entirely conclusory. This provides an additional justification for the March Order's grant of summary judgment. See O'Diah v. New York City, No. 02 Civ. 274, 2003 WL 22021921, at *3 (S.D.N.Y. Aug. 28, 2003).

8

Order at 11-13.  Plaintiffs continue to offer no authority for the proposition that a right of way holder may not only remove obstructions, but may take those items into his own possession.  See Mar. Order at 13 n.9.  Plaintiffs therefore have not demonstrated that the March Order erroneously determined that the extensive information Lehman and Croneiser received regarding Mr. Hogan's taking of the items provided probable cause for his arrest.  See id. at 12-13.

Nor are Plaintiffs' contentions regarding Mr. Hogan's intent grounds for reconsideration.  As the March Order explained, probable cause would not have been vitiated even if Mr. Hogan had "provided an innocuous or lawful justification for his actions."  Mar. Order at 12-13.  Moreover, while Plaintiffs claim that they have "new evidence" of the lawfulness of Mr. Hogan's motivation in taking the items, they point to evidence that is neither new nor demonstrates lawful intent.  Plaintiffs now argue that Mr. Hogan's deposition testimony—given nearly five months *before* the March Order issued, see Dkt. No. 70—indicates that he took the items for the lawful purpose of returning them to their owner.  First Mem. at 2, 4-5.  But the cited deposition passages indicate that Mr. Hogan "believed that [he] thought [he] owned th[e] cable" and had been "given it" by "[w]ho[m]ever was stupid enough to block [his] easement with it."  Dkt. No. 126-2 at 6-7.[5]  While Mr. Hogan also testified that he followed certain unspecified "procedures" to return the property and eventually brought it to the Sheriff's Office, he provides no explanation as to why, if he took the items intending to return them, he waited to do so until after he was arrested for larceny weeks later.  See id. at 7-8.  The First Motion is therefore denied with respect to the false arrest claims.[6]

---

[5] The pagination corresponds to the page numbers assigned by ECF.

[6] Plaintiffs also argue that the March Order should be reconsidered for policy reasons: it sets a "dangerous precedent" allowing the arrest of right-of-way holders for removing obstructions.  First Mem. at 5-6.  This putative policy failing does not amount to a clear error of law or manifest injustice.  Moreover, Plaintiffs' policy argument lacks merit.  According to Plaintiffs, the March

*4. Abuse of Process*

a. Lehman and Croneiser

The First Motion argues that, should the Court find that there was no probable cause or that a fact issue remains as to probable cause, Plaintiffs' § 1983 and common law claim for abuse of process against Lehman and Croneiser must be reinstated. First Mem. at 6. As discussed, *supra*, Plaintiffs have not demonstrated that the Court's probable-cause determination was erroneous. The First Motion is therefore denied as to this argument.

The Second Motion offers another argument for the reinstatement of the common law abuse of process claim against Lehman and Croneiser, which the Court dismissed on qualified immunity grounds. See Mar. Order at 17 n.14. Plaintiffs argue that it was erroneous to do so, because: (1) qualified immunity is not available under New York law where a government official acts in bad faith; and (2) Plaintiffs have presented sufficient evidence of bad faith, including the warning Mr. Hogan received that it was "open season" on the Hogans and any complaint the Hogans made would be ignored, and the use of a racist term to describe Plaintiff. D.O. Second Mem. at 4. But the March Order explicitly acknowledged that qualified immunity is unavailable under New York law where an official's actions are taken in bad faith or without reasonable basis. See Mar. Order at 17 n.14. The Court implicitly found insufficient evidence of bad faith or unreasonableness "'because

---

Order's finding that probable cause existed because Mr. Hogan took the items into his possession will necessarily chill all removal of right-of-way-obstructing items, because the distinction between removing an obstructing item and taking it into one's possession is "tendentious." First Mem. at 5. Plaintiffs' argument is entirely conclusory, and the Court is not convinced that no meaningful distinction can be made between the self-help at issue here—taking easement-obstructing items and placing them in one's car for an extended period of time—and other more innocuous, less possessory forms of obstruction removal. Moreover, even were there a chilling effect, the Court is not convinced it would outweigh the need to deter the aggressive form of self-help committed by Mr. Hogan.

of the same ambiguities in the law'" underlying the determination that Defendants had arguable probable cause and were therefore entitled to qualified immunity on the § 1983 abuse of process claim. Id. (quoting Mangino v. Incorporated Village of Patchogue, 814 F. Supp. 2d 242, 250 n.5 (E.D.N.Y. 2011)). While arguable probable cause and a lack of bad faith are not one and the same, the Court properly considered the former in determining that there was an absence of the latter. See Jenkins v. City of New York, 478 F.3d 76, 87 (2d Cir. 2007) ("If the . . . defendants were entitled to qualified immunity under federal law, summary judgment would be similarly appropriate on [the] state law false arrest claim."); Jones v. Parmley, 465 F.3d 46, 64 (2d Cir. 2006). Moreover, all of the evidence of bad faith to which Plaintiffs now point was before the Court, see Mar. Order at 15-17 & n.17, and Plaintiffs have offered no authority for their argument that this evidence mandated denial of summary judgment. The Second Motion, to the extent it seeks reinstatement of the common law abuse of process claim against Lehman and Croneiser, is therefore denied.

### b. Claims Against Lewis County

Plaintiffs assert that the Court improperly dismissed the § 1983 and common law abuse of process claims against Lewis County based on Lehman and Croneiser's entitlement to qualified immunity. See Second Mem. at 2-4; Mar. Order at 17-18. Plaintiffs are correct. The dismissal of the municipal liability claims was erroneous:

> [T]he entitlement of the individual municipal actors to qualified immunity because at the time of their actions there was no clear law or precedent warning them that their conduct would violate federal law is . . . irrelevant to the liability of the municipality. Qualified immunity is a defense available only to individuals sued in their individual capacity. Municipalities are held liable if they adopt customs or policies that violate federal law and result in tortious violation of a plaintiff's rights, regardless of whether it was clear at the time of the adoption of the policy or at the time of the tortious conduct that such conduct would violate the plaintiff's rights.

Askins v. Doe No. 1, 727 F.3d 248, 254 (2d Cir. 2013) (citations omitted).

11

Thus, Lehman and Croneiser's entitlement to qualified immunity—the only ground upon which the Lewis County Defendants moved for summary judgment and the only ground upon which summary judgment was granted, see Mar. Order at 17-18; Dkt. No. 39-21 ("Lewis County SJ Memorandum") at 15-17—was not a proper basis for granting summary judgment on Plaintiffs' abuse of process claims against Lewis County.

Perhaps recognizing the futility of doing so, the Lewis County Defendants do not respond to the Plaintiffs' substantive contention. Instead, they contend only that: (1) the Second Motion was untimely under Local Rule 7.1(g); and (2) Plaintiffs were dilatory in raising their argument. See Lewis County Second Resp. at 1-5. Plaintiffs did fail to raise this argument in a timely fashion. Nevertheless, under Federal Rule of Civil Procedure 54(b), an interlocutory order "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." "Whether such revision is appropriate in any given case is within the sound discretion of the trial judge." Acha v. Beame, 570 F.2d 57, 63 (2d Cir. 1978). Moreover, "[t]he Court possesses the inherent authority to sua sponte reconsider its own orders before they become final." Cusamano v. Sobek, 604 F. Supp. 2d 416, 435 (N.D.N.Y. 2009). The Court determines that, in spite of the lateness of the hour, the erroneous dismissal of the abuse of process claims against Lewis County should be corrected. The Second Motion, to the extent it seeks reinstatement of these claims, is therefore granted.

## IV. MOTION TO AMEND

### A. Legal Standard

Pursuant to Federal Rule of Civil Procedure 15(a)(1) a party may, within certain defined time periods, amend a pleading as a matter of course. If amendment as a matter of course is not

permitted, a pleading may be amended only if the opposing party consents in writing or the court grants leave. See FED. R. CIV. P. 15(a)(2). Generally, a court "should freely give leave when justice so requires." Id. However, Federal Rule of Civil Procedure 16(b) requires the issuance of scheduling orders that "must limit the time to . . . amend the pleadings." Such scheduling orders "may be modified only for good cause." Id. Thus, when a motion to amend is made after a scheduling order's deadline for doing so has expired, "the lenient standard under Rule 15(a) . . . must be balanced against . . . Rule 16(b)." Grochowski v. Phoenix Constr., 318 F.3d 80, 87 (2d Cir. 2003). There is good cause for permitting modification of pleading-amendment deadlines where the party moving for modification has been diligent in doing so. Id. "[G]ood cause may not be established where the facts underlying the claim were known to the plaintiff at the time the action was filed." Alexander v. Westbury Union Free Sch. Dist., 829 F. Supp. 2d 89, 118 (E.D.N.Y. 2011). "Moreover, while the absence of prejudice to a non-moving party may be relevant in determining whether leave to amend should be granted under Rule 15(a), it does not fulfill the 'good cause' requirement of Rule 16(b)." Carnrite v. Granada Hosp. Group, Inc., 175 F.R.D. 439, 446 (W.D.N.Y. 1997) (quotation marks omitted).

Even if a party has been diligent in moving to amend, leave should be denied where the amendment would be futile, such as where the proposed amendment would be subject to dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. See Foman v. Davis, 371 U.S. 178, 182 (1962); Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993); Ruiz v. Suffolk Cnty. Sheriff's Dep't, No. 03-cv-3545, 2008 WL 4516222, at *2 (E.D.N.Y. Oct. 2, 2008) (leave to amend should be denied where the claim is "clearly frivolous or legally insufficient on its face") (internal quotation marks and citation omitted);

13

Benfield v. Mocatta Metals Corp., No. 91-cv-8255, 1992 WL 177154, at *1 (S.D.N.Y. July 13, 1992) ("If a proposed amendment would be insufficient to withstand a motion to dismiss, it is futile and leave to amend should be denied.").

### B. Discussion

The March Order dismissed the § 1981 claim because § 1983 is the exclusive remedial provision for Plaintiffs' claims against the Lewis County Defendants, who were indisputably acting under color of law. Mar. Order at 24. Plaintiffs seek to amend the Supplemental Complaint so as to change their race- and race-association-based discrimination claim from one brought under 42 U.S.C. § 1981 to one brought under § 1983. See Second Mem. at 4-6; Prop Am. Compl ¶¶ 116-18. Plaintiffs filed the Second Motion nearly a year after the extended deadline for pleading amendments had expired. See Dkt. Nos. 38; 86; September 5, 2012 Text Order. They argue that they promptly moved to amend after the March Order issued and have thereby demonstrated the requisite good cause for modifying the pleading-amendment deadline. See Second Mem. at 4-5. But while Plaintiffs waited a mere two months after the March Order to move to amend, they waited more than a *year* after Defendants gave them notice that "'Section 1983 provides the exclusive remedy for violations of the rights guaranteed under § 1981 in a claim against a state actor.'" Lewis County SJ Mem. at 23 (quoting Carter v. City of Syracuse Sch. Dist., No. 10-CV-690, 2012 WL 930798, at *17). Plaintiffs' prolonged delay in moving to amend despite clear notice of this unambiguous and well-established principle does not amount to the requisite diligence.

Moreover, even if the Court were to overlook the dilatoriness with which Plaintiffs sought to amend, the amendment would be denied as futile. The March Order also dismissed Plaintiffs' 42 U.S.C. § 1982 claim, which was worded identically to the § 1981 claim. Mar. Order at 25-27;

Supplemental Compl. ¶¶ 116-18. The Court found that Plaintiffs were asserting that the Lewis County Defendants' failure to pursue criminal complaints or enforce criminal laws had interfered with Plaintiffs' enjoyment of their property. Id. at 26-27. The March Order determined that Plaintiffs had not demonstrated that the failure to pursue criminal complaints or enforce criminal laws, even if discriminatorily motivated, could "cause loss of enjoyment of property and hence liability under § 1982." Id. at 27. Plaintiffs now bring an identically worded § 1983 claim challenging the exact same conduct and harm. See Prop. Am. Compl. ¶¶ 116-18. But Plaintiffs have again failed to demonstrate, or even argue, that the failure to pursue criminal complaints can cause an actionable loss of property enjoyment.[7] See Second Mem. at 5-6. The Second Motion, to the extent it seeks to amend the Supplemental Complaint, is therefore denied.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the First Motion (Dkt. No. 126) and Second Motion (Dkt. No. 131) are **GRANTED in part and DENIED in part** consistent with this Memorandum-Decision and Order; and it is further

**ORDERED**, that the First Motion (Dkt. No. 126), to the extent it seeks reinstatement of

---

[7] To the extent Plaintiffs allege that Plaintiff D.O. suffered actionable harm other than interference with enjoyment of property, see Prop. Am. Compl. ¶ 117 ("Plaintiff D.O. was subjected to discrimination because of race and Plaintiffs were also otherwise discriminated against in their association and enjoyment of property because of race."), they have failed to identify this specific harm was or offer any support for the theory that such harm arising from the failure to pursue criminal complaints or enforce criminal laws is subject to § 1983 liability. See id.; Second Mem. Plaintiffs' failure to do so is fatal, particularly in light of the multiple opportunities they have already been given to amend and the March Order's warning that Plaintiffs' discrimination theory was unclear and inadequately supported. See Mar. Order at 26 (noting that the § 1982 claim was "vaguely drawn" and supported by inadequate briefing on its legal basis).

Plaintiffs' claim for loss of consortium again Defendants Falter and Wilson, is **GRANTED**; and it is further

**ORDERED**, that the First Motion (Dkt. No. 126), to the extent it seeks reinstatement of any other claim, is **DENIED**; and it is further

**ORDERED**, that the Second Motion (Dkt. No. 131), to the extent is seeks reinstatement of Plaintiffs' § 1983 and common law claim against Defendant Lewis County for abuse of process, is **GRANTED**; and it is further

**ORDERED**, that the Second Motion (Dkt. No. 131), to the extent it seeks reinstatement of any other claim, is **DENIED**; and it is further

**ORDERED**, that the Second Motion (Dkt. No. 131), to the extent it seeks leave to amend Plaintiffs' Supplemental Complaint (Dkt No. 87), is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED: January 10, 2014
Albany, NY

Lawrence E. Kahn
U.S. District Judge