UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

MARK HOGAN, individually and as
guardian and on behalf of his minor
children, J.H. and I.H.; ELIZABETH M.
HOGAN, individually and as guardian and
on behalf of her minor children, J.H. and
I.H.; and DENNIS B. OKUDINANI, as
guardian and on behalf of D.O.,

                          Plaintiffs,

        -against-                                                  7:11-CV-0754 (LEK/ATB)

COUNTY OF LEWIS, NEW YORK;
DAVID VANDEWATER; FRANK ROSE;
RUSSELL FALTER; KATHY WILSON;
LEANNE MOSER, in her individual and
official capacity as District Attorney of the
County of Lewis; CALEB PETZOLDT, in
his individual and official capacity as
Assistant Lewis County District Attorney;
SERGEANT RYAN LEHMAN, in his
individual and official capacity; DEPUTY
BRETT CRONEISER; and JOHN and
JANE DOES,
                          Defendants.
_____

## MEMORANDUM-DECISION and ORDER

## I.      INTRODUCTION

        Plaintiffs Mark Hogan ("Mr. Hogan") and Susan Hogan ("Mrs. Hogan") (together, the

"Hogans" or "Plaintiffs") commenced this action arising out of an ongoing property dispute and

ensuing hostility between Plaintiffs and their neighbors on Hiawatha Lake in Lewis County, New

York.  See generally Dkt. Nos. 1 ("Complaint"); 4 ("Amended Complaint"); 87 ("Supplemental

Complaint").  Presently before the Court are four Motions for summary judgment brought by

Defendants Lewis County, Brett Croneiser ("Croneiser"), Ryan Lehman ("Lehman"), Leanne Moser

("Moser"), and Caleb Petzoldt ("Petzoldt") (together, the "Lewis County Defendants"); David Vandewater ("Vandewater"); Russell Falter ("Falter"); Kathy Wilson ("Wilson"); and Frank Rose ("Rose") (collectively, "Defendants").  Dkt. Nos. 171 ("Vandewater Motion); 174 ("Falter and Wilson Motion"); 176 ("Lewis County Motion"); 177 ("Rose Motion").  For the reasons that follow, the Lewis County Motion is granted in full, and the remaining Motions are granted in part and denied in part.

## II.     BACKGROUND

### A.  Procedural History

Plaintiffs filed their original Complaint on July 1, 2011.  Compl.  After Plaintiffs filed an Amended Complaint, the Lewis County Defendants and Falter and Wilson each moved for summary judgment.  Am. Compl.; Dkt. Nos. 39; 43.  Plaintiffs then filed a Supplemental Complaint, which is the operative pleading in this action.  Supp. Compl.  The Lewis County Defendants and Falter and Wilson informed the Court that they did not intend to supplement their Motions in response to the alterations made in Plaintiffs' Supplemental Complaint.  Dkt. Nos. 99; 103.

On March 8, 2013, the Court issued a Memorandum-Decision and Order granting in part and denying in part the Motions for summary judgment.  Dkt. No. 125 ("March Order").  Plaintiffs filed two Motions for reconsideration of the March Order, which the Court granted in part and denied in part.  Dkt. Nos. 126; 131; 151.  The parties then engaged in discovery, and a second round of Motions for summary judgment ensued.

### B.  Factual Background

Given the lengthy litigation history, the Court presumes the parties' familiarity with the background of this case and recites only those facts necessary to resolve the pending Motions.

*1. Plaintiffs' Neighbors*

Plaintiffs and Defendants Vandewater, Rose, Falter, and Wilson all own property around Hiawatha Lake. Dkt. Nos. 171 ("Vandewater Statement of Material Facts") ¶¶ 1, 3; 188 ("Plaintiffs' Response Statement of Material Facts - Vandewater") ¶¶ 1, 3. Beginning in or about 2006, hostility developed between Plaintiffs and their neighbors resulting in several state law actions, in addition to the present case. Vandewater SMF ¶¶ 5-6; Pls.' Resp. SMF - Vandewater ¶¶ 5-6.

In one of the state court actions, Plaintiffs' non-party neighbors (the "Wests") brought suit against the Hogans to determine whether the Wests had acquired title to certain of the Hogans' property by adverse possession. See Vandewater SMF ¶¶ 6-7; Pls.' Resp. SMF - Vandewater ¶¶ 6-7; see also West v. Hogan, 930 N.Y.S.2d 708 (App. Div. 2011). Vandewater was joined as a third party in the West action, and the parties stipulated to a right of way (the "easement") to enable the Hogans to access certain lots that they owned. See Vandewater SMF ¶¶ 6-7; Pls.' Resp. SMF - Vandewater ¶¶ 6-7. However, the parties vehemently disagree over the precise location of the easement—specifically, whether the easement directly abuts, crosses over, or is set apart from Rose's property line. Vandewater SMF ¶ 8; Pls.' Resp. SMF - Vandewater ¶ 8.

The dispute over the location of the easement is only one element of the overall conflict between the Hogans and their neighbors. Vandewater asserts that he and Mr. Hogan "have had several verbal and one physical alteration since 2006." Vandewater SMF ¶ 10. Plaintiffs respond that "Vandewater has verbally harassed and screamed at [them] repeatedly." Pls.' Resp. SMF - Vandewater ¶ 10.

In one instance, Plaintiffs allege that Vandewater "lurched a 2000 lb Kubota tractor at [their] son and [their] son's friend." Pls.' Resp. SMF - Vandewater ¶ 10. Plaintiffs assert that Vandewater physically attacked Mr. Hogan during this same incident. Id. ¶ 10. Rose was present in the utility vehicle along with Vandewater during this incident; however, Rose contends that he was merely a passive passenger. See Dkt. No. 177-1 ("Rose Statement of Material Facts") ¶¶ 72-77. Plaintiffs, on the other hand, assert that Rose "encouraged" Vandewater in his effort to harass and terrify minor Plaintiffs D.O. and J.H. Dkt. No. 199 ("Plaintiffs' Response Statement of Material Facts - Rose") ¶¶ 72-77.

With respect to Falter and Wilson, they contend that they "have never defaced destroyed or vandalized [P]laintiffs' property." Dkt. No. 174-1 ("Falter and Wilson Statement of Material Facts") ¶ 6. However, Plaintiffs assert that Falter and Wilson "constructed and aided in the construction of barriers for the sole purpose of preventing Plaintiffs from accessing their property." Dkt. No. 192 ("Plaintiffs' Response Statement of Material Facts - Falter and Wilson") ¶ 6. Specifically, Plaintiffs allege that Falter and Wilson, at Rose's request, on two occasions placed a steel cable between trees across Plaintiffs' easement to prevent them from being able to access their property. FW SMF ¶¶ 6-7; Pls.' Resp. SMF - FW ¶¶ 6-7.

Rose does not deny erecting the steel cables, but asserts that the cables and a "no trespassing" sign were placed to protect *his* property from trespassers. See Rose SMF ¶¶ 52-55. Rose also placed two sawhorses across the entrance to his "driveway"; Plaintiffs assert that the sawhorses were placed not across Rose's driveway, but to interfere with Plaintiffs' easement. See id. ¶¶ 56, 70; see also Pls.' Resp. SMF - Rose ¶¶ 56, 70. Rose later discovered that Mr. Hogan had taken Rose's saw horses and steel cables; Rose filed a complaint with the Lewis County Sheriff's

Department and provided them with photographs from his security cameras corroborating the alleged larceny.  Id. ¶ 59.[1]

Plaintiffs further allege that Falter and Wilson have verbally harassed, screamed at, and directed vulgar language at the Hogans while on their property.  Id.  Plaintiffs also claim that Falter and Wilson blocked Plaintiffs' right of way with their pick up trucks on a number of occasions between 2007 and 2010, FW SMF ¶ 10; Pls.' Resp. SMF - FW ¶10, and that Falter and Wilson swerved at the Hogans' vehicle "to intimidate and harass the Plaintiffs," id. ¶ 10.  Finally, Plaintiffs allege that Falter and Wilson directed racial epithets at Plaintiff D.O. while visiting the Hogans' property.  Id. ¶ 11; see also Am. Compl. ¶ 107 (noting that D.O. is African-American).

### 2.  The Lewis County Defendants

The Hogans have filed numerous complaints against their neighbors with the Lewis County Sheriff's Department, including on August 29, 2008, April 9, 2009, and April 26, 2010.  Dkt. Nos. 176-27 ("Lewis County Statement of Material Facts") ¶¶ 1, 3, 6; 204 ("Plaintiffs' Response Statement of Material Facts - Lewis County") ¶¶ 1, 3, 6.  The Sheriff's Department responded to all of Mr. Hogan's complaints.  See Lewis Cnty. SMF ¶¶ 1, 3, 6; Pls.' SMF Resp - Lewis Cnty. ¶¶ 1, 3, 6.

Lehman and Croneiser were only involved with the April 26, 2010, complaint, which involved one of the steel cable incidents described supra.  See Lewis Cnty. SMF ¶ 7.  Mr. Hogan admitted that he took the steel cable, but asserted that he did so to preserve it because he did not know to whom it belonged.  Pls.' SMF Resp - Lewis Cnty. ¶¶ 8-10.  Lehman and Croneiser

---

[1] Rose had installed motion-sensitive lights and a security camera to detect and thwart trespassers.  See Rose SMF ¶¶ 48-51.

informed Mr. Hogan that he needed to return the cable or face arrest; Mr. Hogan complied and was not charged criminally at that time.  Id. ¶¶ 10-11.  However, Mr. Hogan was arrested on May 29, 2010, for petit larceny after removing the cable and sawhorse blocking his claimed right of way two weeks prior.[2]  Id. ¶¶ 12, 43; Pls.' SMF Resp - Lewis Cnty. ¶ 12.

Plaintiffs later filed another trespassing complaint with the Sheriff's department against the Wests on July 5, 2010.  Pls.' SMF Resp - Lewis Cnty. ¶ 12.  Croneiser met with Mr. Hogan and filed an incident report.  Id. ¶¶ 13-14.  Plaintiffs assert that the Wests were not charged, however, because Moser informed Croneiser not to charge them.  Id. ¶ 14.

Plaintiffs generally allege a broad campaign by the Lewis County Defendants to drive Plaintiffs out of Hiawatha Lake by processing criminal complaints against the Hogans but refusing to pursue the Hogans' complaints against their neighbors.  See, e.g., Pls.' SMF Resp - Lewis Cnty. ¶ 20 (asserting that Assistant District Attorney Petzoldt informed Plaintiffs, "We don't want you in Lewis County."); id. ¶ 24 (claiming that Croneiser was informed by Petzoldt that it was "open season" on the Hogans); id. ¶ 36 (alleging that "Lehman suggested that [P]laintiff[s] should just sell everything and find some place to go").

## III.   LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure instructs a court to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  Although "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary judgment, "summary judgment will not lie if . . . the

---

[2] It is not entirely clear from the parties' Statements of Material Facts, but it appears that Mr. Hogan was accused of taking Rose's steel cables and/or saw horses on more than one occasion; however, it is undisputed that Mr. Hogan was only arrested one time, on May 29, 2010.

evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Taggart v. Time, Inc., 924 F.2d 43, 46 (2d Cir. 1991).

The party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows that there is no genuine dispute as to any material fact, the burden shifts to the nonmoving party to demonstrate "the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. This requires the nonmoving party to do "more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Corp., 475 U.S. 574, 586 (1986). Mere conclusory allegations, speculation, or conjecture will not avail a party opposing summary judgment. Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996).

At the same time, a court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); Nora Beverages, Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 742 (2d Cir. 1998). A court's duty in reviewing a motion for summary judgment is "carefully limited" to finding genuine disputes of fact, "not to deciding them." Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1224 (2d Cir. 1994). "The role of the court is not to weigh the evidence and determine the truth of the matter, but rather to perform the 'threshold inquiry of whether there is the need for a trial.'" Feder v. Target Stores, No. 11-CV-3675, 2014 WL 1651955, at *2 (E.D.N.Y. Apr. 24, 2014) (quoting Anderson, 477 U.S. at 249-50.

## IV. DISCUSSION

In their respective Motions, Defendants move for summary judgment on all remaining claims. Vandewater and Rose move for summary judgment on the following claims: (1) interference with easement; (2) intentional infliction of emotional distress; (3) private nuisance; (4) negligence and gross negligence; (5) racial discrimination pursuant to 42 U.S.C. §§ 1981, 1982, and 1985, and New York Civil Rights Law §40-c; and (5) loss of consortium. <u>See generally</u> Vandewater Mot.; Rose Mot. Falter and Wilson seek summary judgment on Plaintiffs' claims of: (1) private nuisance; (2) racial discrimination pursuant to 42 U.S.C. §§ 1981 and 1982, and New York Civil Rights Law §40-c; and (3) loss of consortium. <u>See generally</u> FW Mot. The Lewis County Defendants move for summary judgment on all remaining claims against them, which include: (1) conspiracy to deprive Plaintiffs of their equal protection rights under the Fourteenth Amendment pursuant to § 1983; (2) abuse of process pursuant to § 1983; and (3) common law abuse of process pursuant to New York law. <u>See generally</u> Lewis Cnty. Mot.

### A. Plaintiffs' Neighbors

#### 1. Interference With Easement

"In the case of an affirmative easement, the owner of the dominant tenement—the easement holder—acquires or is granted a right to use another person's land in a particular, though limited, way." <u>Sutera v. Go Jokir, Inc.</u>, 86 F.3d 298, 302 (2d Cir. 1996). "Although no affirmative duty is imposed on the servient owner, there is a passive duty that it not interfere with the dominant owner's exercise of its easement rights." <u>Id.</u> (citation omitted).

#### a. Vandewater

Vandewater argues that he is entitled to judgment as a matter of law on Plaintiffs'

interference with easement claim against him because Plaintiffs have no property right over the land at issue. Dkt. No. 171-2 ("Vandewater Memorandum") at 2-3. Specifically, Vandewater argues that the West trial and subsequent stipulation establish that the designated right of way is not adjacent to the Rose property line; thus, even if Vandewater were blocking Plaintiffs from accessing that land, he cannot be liable since Plaintiffs have no interest in the land. Id. at 3. Plaintiffs respond that Vandewater is incorrect; the stipulation and evidence from the West trial firmly establish that the easement Plaintiffs were granted extends from the border of Rose's property line at a width of twelve feet into Vandewater's property. Dkt. No. 186 ("Response to Vandewater") at 2. Plaintiffs assert that this evidence refutes Vandewater's assertion that there is a "set back" from Rose's property line. Id. at 2. Furthermore, Plaintiffs argue that Vandewater has not offered a survey, expert affidavit, or any other proof to establish that the easement does not border or cross his property. Id. at 3.

The parties do not appear to dispute the element of interference. Thus, the issue before the Court is whether that interference occurred on land in which Plaintiffs held a property right. The Court has carefully reviewed the stipulation and testimony from the West trial and finds that Vandewater has failed to establish that there is no genuine issue of material fact as to the location of the easement, and thus whether he interfered with Plaintiffs' easement.

The Order and Judgment issued following the West trial indicates that the parties stipulated to a right of away "along the back lot lines of Lots 19-23[3], at a width of 12 feet *from those back lot lines*." Dkt. No. 189-2 at 5-6. Although Vandewater appears to argue that the stipulation is unambiguous in his favor, the Court interprets "along the back lot lines" and "from those back lot

_____

[3] Lots 19, 21, and 22 are owned by the Hogans, and Rose own Lot 23. Rose Mem. at 2-3.

lines" to indicate that the easement begins precisely at the edge of the property lines—including

Rose's back property line—and extends at a width of twelve feet therefrom. Moreover, during the

West trial, Vandewater testified as to the location of the easement by drawing "a red line going

*along the back property lines*." Dkt. No. 181-10 at 125. Furthermore, Vandewater's deposition

corroborates that the easement begins at the edge of Rose's property line. See Dkt. No. 189-4 at 73

("Q: This right of way has been defined? A: Yes, the back lot of Mr. Rose's line and through my lot

at 12 feet in width."). Vandewater has failed to offer any other evidence affirmatively establishing

that the easement does not begin to run from Rose's property line. Therefore, Vandewater is not

entitled to summary judgment on Plaintiffs' interference with easement claim.

### b. Rose

As an initial matter, the Court notes that Rose attempts to categorically dismiss all property-

related, state law claims against him based on the fact that the claimed right of way does not exist in

the location Plaintiffs have alleged. See Dkt. No. 177-2 ("Rose Memorandum") at 3-9. However,

this argument must be rejected because, as stated *supra*, there exists a genuine issue of material fact

with respect to the exact location of the easement at issue. Thus, the Court will determine whether

Rose is entitled to summary judgment on each claim individually.

In the March Order, the Court granted Falter and Wilson summary judgment on Plaintiffs'

interference with easement claim because the Court, and Plaintiffs, were "unable to identify any

New York State cause of action for damages against a third party for interference with easement that

might be applicable to the facts of this case." Mar. Order at 30-31 (noting that the easement at issue

exists only between Vandewater and the Hogans). Rose argues that the law of the case doctrine

dictates the same outcome with respect to Plaintiffs' interference with easement claim against him.[4] Rose Mem. at 11-13. Specifically, Rose asserts, as with the claim against Falter and Wilson, Rose is also a third party being sued for damages. Id. Plaintiffs attempt to distinguish Rose from Falter and Wilson on the grounds that Rose has a "property interest" in the easement because he may be using part of the right of way to enter his property. Dkt. No. 198 ("Response to Rose") at 5-7.

Plaintiffs' attempt to distinguish Rose from Falter and Wilson based on Rose's alleged "property interest" must fail because it is undisputed that Rose is not a party to the grant of the easement from Vandewater to the Hogans. See Green v. Mann, 655 N.Y.S.2d 627, 629 (App. Div. 1997) (noting that only "[t]he *servient* tenement is prohibited from unreasonably interfering with the rights of the plaintiffs to use the easement") (listing cases) (emphasis added). Even if Rose had a property interest in the right of way—of which Plaintiffs have provided no proof—Plaintiffs have nonetheless provided no authority that someone other than the servient estate holder may be liable for damages in an interference with easement cause of action. Indeed, the lone case Plaintiff cites for third-party liability concerning an easement is irrelevant because it only involved claims for negligence and loss of consortium; it did not concern an interference with easement claim. See Resp. Rose at 5 (citing Sutera, 86 F.3d at 300). Accordingly, Rose is entitled to summary judgment on Plaintiffs' interference with easement claim against him.

### 2. Intentional Infliction of Emotional Distress

In order to state a claim for intentional infliction of emotional distress ("IIED") in New

---

[4] "The 'law of the case' doctrine is a rule of practice followed by New York courts that dictates that 'a decision on an issue of law made at one stage of a case becomes binding precedent to be followed in subsequent stages of the same litigation.'" Kregler v. City of New York, 821 F. Supp. 2d 651, 657 (S.D.N.Y. 2011) (quoting Westerbeke Corp. v. Daihatsu Motor Co., 304 F.3d 200, 218 (2d Cir. 2002)).

York, a plaintiff must show: "(1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." Stuto v. Fleishman, 164 F.3d 820, 827 (2d Cir. 1999). The standard for stating a valid claim is "rigorous, and difficult to satisfy" because the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Howell v. N.Y. Post Co., 81 N.Y.2d 115, 122 (N.Y. 1993) (internal quotation marks and citation omitted). Further, IIED is a "highly disfavored claim[ ] under New York law." Williams v. City of Mount Vernon, 428 F. Supp. 2d 146, 160 (S.D.N.Y. 2006) (internal quotation marks and citation omitted); see also Seltzer v Bayer, 709 N.Y.S.2d 21, 23 (App. Div. 2000) ("This threshold of outrageousness is so difficult to reach that, of the intentional infliction of emotional distress claims considered by the Court of Appeals, every one has failed because the alleged conduct was not sufficiently outrageous." (citation and internal quotation marks omitted)).

Nevertheless, "[c]ourts have held that continuous and coercive harassment can establish an IIED cause of action." Neufeld v. Neufeld, 910 F. Supp. 977, 984 (S.D.N.Y. 1996) (citing Alexander v. Unification Church of Am., 634 F.2d 673, 678-79 (2d Cir. 1980) (filing of harassing lawsuits, constant surveillance, patrolling of plaintiffs' homes); Green v. Fischbein Olivieri Rozenholc & Badillo, 507 N.Y.S.2d 148 (App. Div. 1986) (baseless eviction proceedings against plaintiff-tenant by landlord, disruption in services, deterioration of living conditions, interference with mail, verbal abuse of plaintiff and his guests); but see Gay v. Carlson, 60 F.3d 83, 89 (2d Cir. 1995) (finding that the plaintiff had not established an IIED claim where "[a]ll that plaintiff alleges that any of the defendants has done is lodge official complaints about plaintiff's conduct or discuss

the basis of those complaints with others").

a. Vandewater

Vandewater argues that he is entitled to summary judgment on Plaintiffs' IIED claim because: (1) the incidents alleged do not rise to the level of being so "severe and outrageous" to constitute an IIED claim; and (2) Plaintiffs have failed to provide any medical evidence demonstrating that any Plaintiff suffered emotional distress. Vandewater Mem. at 4-7. Plaintiffs respond by: (1) refuting Vandewater's characterization of the relevant incidents, arguing that they were sufficiently extreme and outrageous; and (2) asserting that Plaintiffs sought and received medical treatment for severe emotional distress. Resp. Vandewater at 10-13.

The Court addresses Vandewater's latter argument first. Recent case law has established that, under New York law, a plaintiff must provide medical evidence of severe emotional distress to prevail on an IIED claim. See Allam v. Meyers, 906 F. Supp. 2d 274, 282 (S.D.N.Y. 2012) ("As Meyers correctly argues, governing New York law requires plaintiffs to 'present medical evidence of severe emotional distress' to substantiate their IIED claims.") (listing cases); see also Samtani v. Cherukuri, No. 11-CV-02159, 2015 WL 64671, at *16 (E.D.N.Y. Jan. 5, 2015) ("The Court finds that—given the balance of appellate division case law in support of a medical evidence requirement, the relatively unpersuasive rationale underlying the cases to the contrary, and the dicta in Ornstein—the New York Court of Appeals would likely hold that IIED claims require medical evidence to withstand a summary judgment motion.")

Plaintiffs asserts that they "have sought and received medical treatment for severe emotional distress and psychological harm." Resp. Vandewater at 10. In support, Plaintiffs have submitted medical records from a psychologist concerning visits by Mr. Hogan, Mrs. Hogan, J.H., and I.H.

Dkt. No. 226. However, other than simply filing these records, Plaintiffs have not made any specific reference to indicate where in the medical records any Plaintiff was diagnosed or treated for severe emotional distress. See generally Resp. Vandewater. Indeed, the Court has carefully reviewed the medical records and finds that they do not indicate any diagnosis or reported symptoms of severe emotional distress.

Rather than explaining how the medical records support their claim, Plaintiffs rely exclusively on self-diagnoses embedded in their respective Affidavits. See Resp. Vandewater at 11-13. However, these self-diagnoses certainly do not constitute "medical evidence" of emotional distress. Therefore, Plaintiffs have failed to provide any medical evidence of severe emotional distress, and Vandewater is entitled to summary judgment on Plaintiffs' IIED claim against him. See Meyers, 906 F. Supp. 2d at 282.

### b. Rose

Rose argues that Plaintiffs' IIED claim against him must be dismissed because, *inter alia*, Plaintiffs have failed to produce medical evidence to substantiate their claims. Rose Mem. at 17-23. Rose asserts that the medical records Plaintiffs have provided not only fail to demonstrate severe emotional distress, they *actually refute* that any Plaintiff experienced severe emotional distress. Id. at 20-21. Plaintiffs respond that (1) they are not required to submit medical evidence; (2) even if they are, they have submitted medical evidence demonstrating severe emotional distress. Resp. Rose at 10.

Considering Plaintiffs' latter argument first, as discussed *supra*, Plaintiffs' self-diagnoses of severe emotional distress are insufficient to survive summary judgment on an IIED claim. With respect to Plaintiffs' first argument, the Court has already noted *supra* that a plaintiff is required to

provide medical evidence to support an IIED claim. Indeed, the primary case on which Plaintiff relies in support of its argument that a plantiff need not provide medical evidence to prevail in an IIED claim, <u>Murray v. 600 E. 21st St. LLC</u>, 850 N.Y.S.2d 329 (Sup. Ct. 2007), was expressly reversed on appeal on the IIED claim, <u>see</u> <u>Murray v. 600 E. 21st St., LLC</u>, 865 N.Y.S.2d 557, 557-58 (App. Div. 2008) (reversing supreme court on IIED claim). Accordingly, Rose is entitled to summary judgment on Plaintiffs' IIED claim.

### 3. Private Nuisance

The elements of a claim for private nuisance are: "(1) an interference substantial in nature, (2) intentional in origin, (3) unreasonable in character, (4) with a person's property right to use and enjoy land, (5) caused by another's conduct in acting or failure to act." <u>Copart Indus. v Consol. Edison Co. of N.Y.</u>, 41 N.Y.2d 564, 570 (1977) (citation omitted).

### a. Vandewater

Vandewater argues that because Plaintiffs do not have a property right in the claimed easement, they cannot state a viable claim against Vandewater for private nuisance. Vandewater Mem. at 7-8. However, as stated *supra*, the Court finds that there exists a genuine issue of material fact with respect to the precise location of the easement. Accordingly, the Court must reject Vandewater's argument that Plaintiffs' private nuisance claim fails as a matter of law for lack of possessing the requisite property right.

### b. Falter and Wilson

Falter and Wilson argue that Plaintiffs' private nuisance claim against them should be dismissed because the allegations, even if true, were temporary and isolated in nature, and thus not sufficiently "substantial" to support a private nuisance claim. Dkt. No. 174-2 ("Falter and Wilson

Memorandum") at 4-6. Alternatively, Falter and Wilson argue that, at minimum, this claim should be dismissed against Wilson because Plaintiffs have not alleged that she participated in any of the activities underlying their private nuisance claim. Id. at 6. Plaintiffs respond that: (1) in the March Order, the Court denied Falter and Wilson summary judgment on this claim, and because Falter and Wilson have produced no new evidence to disturb this ruling, the law of the case doctrine applies; and (2) even if the law of the case doctrine does not apply, there nonetheless exists a triable issue of fact with regard to the alleged interference. Dkt. No. 191 ("Response to Falter and Wilson") at 2-4.

In the March Order, the Court held that Plaintiffs' allegations "that Defendants Falter and Wilson essentially made it impossible for them to access their cabin and their property by parking cars in front of a right-of-way and otherwise impeding travel" was sufficient to survive Falter and Wilson's First Motion for summary judgment. Mar. Order at 36. However, the Falter and Wilson Motion was filed before the parties had conducted discovery. See Docket. As Falter and Wilson correctly point out, "[p]rior rulings may be re-considered in the light of . . . a more complete factual record developed during discovery." Dkt. No. 221 ("Falter and Wilson Reply") at 2 (citing Childress v. Taylor, 798 F. Supp. 981, 994 (S.D.N.Y. 1992)) (citation omitted). Depositions taken during discovery have amplified the factual record, and the Court therefore finds the law of the case doctrine inapplicable to this claim.

The remaining issue then is whether there exists a genuine issue of material fact that the allegations against Falter and Wilson are "substantial" enough to support a private nuisance claim. Plaintiffs alleges that Falter and Wilson interfered with their ability to access their property by twice erecting steel cables across their right of way. Resp. FW at 4. Moreover, Falter admitted to erecting the steel cables, and Wilson admitted that she was present on one occasion. See Dkt. Nos. 194-11

16

("Falter Deposition") at 14-15; 194-12 ("Wilson Deposition") at 19. Again, Falter and Wilson argue that these acts are not substantial because they were isolated in nature and only caused Hogan to have to "simply" remove the cables to access his property. FW Mem. at 5-6.

Ironically, both parties rely on Aristides v. Foster, 901 N.Y.S.2d 688 (App. Div. 2010) to support their respective positions. See FW Mem. at 6; Resp. FW at 5. In Aristides, the appellate division affirmed denial of summary judgment on plaintiffs' private nuisance claim where it was alleged that defendants had parked large, commercial trucks in front of plaintiffs' property several times a day, over the course of many years, obstructing plaintiffs' access to their home, and emitting noxious fumes and noise. 901 N.Y.S.2d at 689-90. Although the allegations in Aristides appear greater in severity and frequency than those alleged against Falter and Wilson, the Court is not persuaded by Falter and Wilson's reliance on this single case that they are entitled to judgment as a matter of law on Plaintiffs' private nuisance claim. Indeed, courts have denied summary judgment on private nuisance claims concerning far less severe conduct. See, e.g., Broxmeyer v. United Capital Corp., 914 N.Y.S.2d 181, 183 (App. Div. 2010) (denying summary judgment where defendants installed commercial HVAC units that generated noise which bothered plaintiffs in their home). Moreover, "[w]hether or not an interference is substantial enough to rise to the level of private nuisance is a question of fact for the jury." Rojas v. Theobald, No. 02-CV-3623, 2007 WL 2455133, at *5 (E.D.N.Y. Aug. 23, 2007) aff'd sub nom. Rojas v. Schkoda, 319 F. App'x 43 (2d Cir. 2009) (citation omitted). Accordingly, Falter and Wilson have failed to show that they are entitled to summary judgment on Plaintiffs' private nuisance claim.[5]

_____

[5] With respect to Wilson's claim that she was only present on one occasion, the facts before the Court do not firmly establish her level of participation. Moreover, Falter and Wilson have not provided any legal authority for the requisite level of participation necessary to find a party liable for

<u>c.</u> <u>Rose</u>

Rose argues that Plaintiffs' private nuisance claim against him must be dismissed because: (1) Plaintiffs do not have the requisite property interest; (2) any interference regarding the easement was not substantial because "the Hogans have only been able to identify four occasions on which their access to their vacant Lot Nos. 19-22 was impeded," which in any event did not "actually prevent[] the Hogans from passing through and accessing their vacant lots"; and (3) Plaintiffs' allegations that Rose filed criminal charges against the Hogans, installed motion-sensitive lights on the right of way, and made "gorilla noises" while passing by the Hogans' property are also not substantial. Rose Mem. at 23-27.

Rose recognizes that the Court previously denied summary judgment to Falter and Wilson on lesser allegations, yet states that the Court's "holding should not preclude summary judgment in favor of Mr. Rose." <u>Id.</u> at 27. In support, Rose argues that the Court is not bound by its holding with respect to Falter and Wilson because the conduct alleged against Rose falls far short of that set forth in <u>Aristides</u>. <u>Id.</u> at 28.

However, as discussed *supra*, the Court has rejected Falter and Wilson's claim that they were entitled to judgment as a matter of law by relying on <u>Aristides</u>. Here, Rose all but admits that the conduct alleged against him is greater in severity than that alleged against Falter and Wilson, and therefore his attempt to rely on <u>Aristides</u> must likewise be rejected. Furthermore, the Court does not agree with Rose that repeatedly blocking Plaintiffs' right of way, directing bright lights at the Hogans right of way, making "gorilla" noises at the Hogans and their guests while on their own

---

private nuisance, and the Court declines to determine *sua sponte* whether presence alone is sufficient to warrant summary judgment on a private nuisance claim.

property,[6] and filing criminal complaints against Mr. Hogan are mere "petty inconveniences" such that no reasonable fact-finder could find them to be "substantial." See Rose Mem. at 28. Accordingly, the Court finds that summary judgment is not warranted in favor of Rose on Plaintiffs' private nuisance claim.

### 3. Negligence and Gross Negligence

It is hornbook law that a plaintiff asserting a negligence claim must prove that "(1) the defendant owed the plaintiff a cognizable duty of care as a matter of law; (2) the defendant breached that duty; and (3) plaintiff suffered damage as a proximate result of that breach." Curley v. AMR Corp., 153 F.3d 5, 13 (2d Cir. 1998). "The existence of a common-law duty in a negligence case is a threshold question of law for the court." Morgan Stanley & Co. Inc. v. JP Morgan Chase Bank, N.A., 645 F. Supp. 2d 248, 255 (S.D.N.Y. 2009) (citing Hayes v. Riverbend Housing Co., Inc., 836 N.Y.S.2d 589, 590 (App. Div. 2007)); see also Williams v. Utica Coll. of Syracuse Univ., 453 F.3d 112, 116 (2d Cir. 2006) ("Under New York law, the question of the existence of a duty is a question of law that is to be answered by the Court of Appeals in a broad, categorical fashion." (internal quotation marks omitted)).

### a. Vandewater

Vandewater argues that he owed no duty to Plaintiff by virtue of being a landowner that has been breached here. Vandewater Mem. at 8. In support, Vandewater cites the March Order in which the Court dismissed negligence claims against Falter and Wilson on the grounds that "[t]he Court is unaware of any general duty that one neighbor owes another that has allegedly been

---

[6] Plaintiffs assert that the "gorilla" noises were intended as a racially derogatory remark, similar to the use of referring to an African-American person as a "monkey." See Resp. Vandewater at 17.

breached in this case. While there certainly are duties relating to the physical damage to property or natural resources, any such duties are irrelevant to the claims at bar. As a result, there can be no factual issue as to this claim, and summary judgment is properly granted." Mar. Order at 37. Vandewater argues that Plaintiffs' negligence claims against him are based on the same neighbor relationship, and thus pursuant to the March Order, those claims should be dismissed. See Vandewater Mem. at 8.

Plaintiffs have advanced a new theory, arguing that "[a] property owner has a duty to take reasonable measures to control the foreseeable conduct of third parties on the property to prevent them from intentionally harming or creating an unreasonable risk of harm to others." Resp. Vandewater at 13-14. In support, Plaintiffs cite a number of cases involving duties imposed on landowners to prevent harm to others by third parties on their property. See id. at 8. However, after careful review, the Court finds that Plaintiffs' reliance on these cases is misplaced. Each case relied on by Plaintiffs concerned a landowner's duty to control his property or third parties on his property with respect to the *safety* of others. See Jaume v. Ry Mgmt. Co., 769 N.Y.S.2d 303, 304 (App. Div. 2003) (finding property owner had no duty to remove all pine cones or prevent children from throwing pine cones from their property); De Ryss v. New York Cent. R. Co., 9 N.E.2d 788, 789-91 (N.Y. 1937) (recognizing a railroad owner could have a duty if it knew that people were in the habit of shooting guns from its bridges or signal towers); Nallan v. Helmsley-Spear, Inc., 407 N.E.2d 451, 455-60 (N.Y. 1980) (recognizing building owner had duty to keep common areas safe in light of recent substantial criminal incidents by third parties in that area). Plaintiffs allege that Vandewater allowed third parties on his property to harass Plaintiffs and their guests, but Plaintiffs have not alleged that Vandewater breached a duty to prevent guests on his property from jeopardizing

Plaintiffs' safety.  <u>See generally</u> Resp. Vandewater.  Thus, the cases Plaintiffs rely on are

distinguishable from the case at bar and do not support Plaintiffs' argument that Vandewater owed

them a duty to prevent Plaintiffs from suffering "harm" on their property.  <u>See id.</u> at 15.

Accordingly, Vandewater is entitled to summary judgment on Plaintiffs' negligence and gross

negligence claims.

<u>b.</u> <u>Rose</u>

Plaintiffs' negligence and gross negligence claims against Rose mirror those alleged against

Falter and Wilson, that as an adjoining landowner Rose "has a duty to prevent his guests and agents

from causing harm to the Plaintiffs."  Resp. Rose at 16.  Rose argues that Plaintiffs do not attempt to

distinguish Rose from Falter and Wilson (or from Vandewater), and therefore the law of the case

doctrine dictates that Rose is also entitled to summary judgment.  Rose Mem. at 29-30.  The Court

agrees.  As stated *supra* with respect to Vandewater, the Court has rejected the argument that an

adjoining landowner owes the duty Plaintiffs have alleged here.  Accordingly, Rose is entitled to

summary judgment on Plaintiffs' negligence and gross negligence claims.

*4. § 1985 Claims*

"The four elements of a § 1985(3) claim are: (1) a conspiracy; (2) for the purpose of

depriving, either directly or indirectly, any person or class of persons of equal protection of the laws,

or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4)

whereby a person is either injured in his person or property or deprived of any right of a citizen of

the United States."  <u>Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.</u>, 7 F.3d 1085, 1087-88 (2d

Cir. 1993) (citing <u>1088 United Bhd. of Carpenters, Local 610 v. Scott</u>, 463 U.S. 825, 828-29

(1983)).  Furthermore, the conspiracy must also be motivated by "some racial or perhaps otherwise

21

class-based, invidious discriminatory animus behind the conspirators' action." <u>Scott</u>, 463 U.S. at 829.

a. <u>Vandewater</u>

Vandewater argues that Plaintiffs' § 1985 claim against him must be dismissed because: (1) there is no evidence in the record that Vandewater's alleged actions were racially motivated; (2) there is no evidence of a conspiracy; and (3) Plaintiffs have failed to allege or provide evidence that they were prevented from exercising any right or privilege of a citizen of the U.S.  Vandewater Mem. at 9-10.  Plaintiffs respond that (1) there is sufficient evidence of a racially motivated conspiracy; and (2) "Vandewater has interfered with Plaintiffs' property rights."  Resp. Vandewater at 18.

The Court considers Vandewater's last argument first.  It is well established that § 1985(3) does not itself create any substantive rights; rather, it serves only as a vehicle for vindicating federal rights and privileges which have been defined elsewhere.  <u>See</u> <u>Great Am. Fed. Sav. & Loan Ass'n v. Novotny</u>, 442 U.S. 366, 376 (1979).  Moreover, in the context of actions brought against private conspirators, the Supreme Court has thus far recognized only two rights protected under § 1985(3): (1) the right to be free from involuntary servitude, and (2) the right to interstate travel.  <u>See</u> <u>Bray v. Alexandria Women's Health Clinic</u>, 506 U.S. 263, 278 (1993); <u>accord</u> <u>Brown v. Philip Morris Inc.</u>, 250 F.3d 789, 805 (3d Cir. 2001).

Here, the Court notes that with respect to Plaintiffs' § 1985 claim, the Supplemental Complaint alleges that "Plaintiffs have a Constitutional right to be free from intimidation and assault motivated by race and/or association with minorities."  Supp. Compl. ¶ 109.  Plaintiffs appear to have abandoned this theory in favor of arguing that their "property rights" were violated

by Vandewater. See Resp. Vandewater at 18. However, under either scenario, Plaintiffs' claim must fail because, as stated *supra*, the Supreme Court has thus far only found two rights protected under § 1985, neither of which is at issue here. See Bray, 506 U.S. at 278. Moreover, § 1985 does not provide for liability against private actors for infringing on one's property rights or for harassment, even if racially motivated. See Frasco v. Mastic Beach Prop. Owners' Ass'n, No. 12-CV-2756, 2014 WL 3735870, at *6 (E.D.N.Y. July 29, 2014) (granting summary judgment for defendants on plaintiffs' § 1985 claim where plaintiffs alleged defendants violated plaintiffs' property rights); see also Emanuel v. Barry, 724 F. Supp. 1096, 1103 (E.D.N.Y. 1989) (finding plaintiffs' "rights to be free from racial violence, not to be terrorized, and to be secure in their personal effects and property" against private actors did not state cognizable claim under § 1985). Accordingly, Vandewater is entitled to summary judgment on Plaintiffs' § 1985 claim against him.

### b. Rose

Rose argues that Plaintiffs' § 1985 claim against him must be dismissed because, *inter alia*, Plaintiffs have failed to allege that Rose's actions deprived Plaintiffs of any of the rights enumerated in the statute. Rose Mem. at 30-33. As discussed *supra*, Rose is correct. Plaintiffs have failed to offer any different arguments than those asserted in response to the Vandewater Motion, and therefore their claim against Rose pursuant to § 1985 must be dismissed.

### 5. § 1981 Claims

"To establish a claim under § 1981, a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.)."

23

Mian, 7 F.3d at 1087.

### a. Vandewater

Vandewater argues that Plaintiffs' § 1981 claim against him must be dismissed because: (1) his use of "a racially charged word on one occasion and a phrase of questionable racial import on another" fail to establish any intent to discriminate on the basis of race; and (2) the alleged discrimination does not concern any of the activities enumerated in the statute. Vandewater Mem. at 10-11. Plaintiffs respond that (1) Vandewater's actions were motivated by race; and (2) Vandewater interfered with the "making, enjoying, and enforcement of contracts." Resp. Vandewater at 20.

The Court considers Vandewater's second argument first. It is well-settled that "[a]ny 1981 claim . . . must initially identify an impaired 'contractual relationship,' under which the plaintiff has rights." Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 476 (2006) (citing 42 U.S.C. § 1981(b)); see also Krulik v. Board of Educ., 781 F.2d 15, 23 (2d Cir. 1986) ("In order to succeed under § 1981, a plaintiff must present evidence to show both that he was subjected to intentional discrimination, and that this discrimination interfered with a contractual relationship.") (citations omitted).

Here, Plaintiffs argue that Vandewater interfered with Plaintiffs' contractual relationships in the following ways: (1) Mr. Hogan intended to purchase another property on Hiawatha Lake but withdrew his bid after Vandewater and others unlawfully imprisoned Mr. Hogan, J.H., and I.H.; (2) Vandewater and others verbally threatened landscapers hired by Plaintiffs and, consequently, the landscapers would not complete the work; (3) Mr. Hogan attempted to sell his property, but the prospective buyer backed out after Vandewater and others "swarmed" and harassed her; and (4) Mr.

Hogan attempted to give away his land for free but the "prospective recipient" refused to accept the land on account of Plaintiffs' neighbors. Resp. Vandewater at 21.

As an initial matter, the Court notes that, although Plaintiffs have not alleged that Vandewater infringed on a contractual relationship between Plaintiffs and Vandewater, the fact that a third party infringed on a contractual relationship does not bar a claim under § 1981. See Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 75 (2d Cir. 2000). However, even accepting Plaintiffs' allegations as true, they have failed to state a viable claim under § 1981 because Vandewater held no authority to interfere with Plaintiffss' contracts. "[L]iability under § 1981 for interference with a third-party contract attaches only to persons who actually had the power or authority to prevent the plaintiffs from contracting with the third party." Ginx, Inc. v. Soho Alliance, 720 F. Supp. 2d 342, 358 (S.D.N.Y. 2010) (citing Harris v. Allstate Ins. Co., 300 F.3d 1183, 1197 (10th Cir. 2002) (requiring a demonstration "that the party both possessed sufficient authority to significantly interfere with the individual's ability to obtain contracts with third parties, and that the party actually exercised that authority to the individual's detriment")). Here, Plaintiffs have not alleged—nor could they demonstrate—that Vandewater held power or authority to interfere with any of the contractual relationships described. Accordingly, Vandewater is entitled to summary judgment on Plaintiffs' § 1981 claim.

### b. Falter and Wilson

Falter and Wilson argue that Plaintiffs' § 1981 claim against them should be dismissed because Plaintiffs have not established (1) any intentional discrimination on the basis of race, or (2) that such acts interfered with any of the activities enumerated in the statute. FW Mem. at 9-10. Plaintiffs did not respond. See generally Resp. FW. Plaintiffs have therefore abandoned this claim.

25

See Barmore v. Aidala, 419 F. Supp. 2d 193, 201-02 (N.D.N.Y. 2005) (noting that the failure to oppose a motion "is deemed abandonment of the claim, and, in the Northern District of New York, is deemed consent to granting that portion of the motion." (citing Rizzo-Puccio v. Coll. Auxiliary Servs., Inc., 216 F.3d 1073 (2d Cir. 2000)); see also L.R. 7.1(b)(3). Accordingly, Falter and Wilson are entitled to summary judgment on Plaintiffs' § 1981 claim.

### c. Rose

Rose argues that Plaintiffs' § 1981 claim against him should be dismissed because, *inter alia*, Plaintiffs have failed to allege that Rose's actions deprived Plaintiffs of any of the rights enumerated in the statute. Rose Mem. at 30. As stated *supra*, Rose is correct, and accordingly is granted summary judgment on Plaintiffs' § 1981 claim.

### 6. *§ 1982 Claims*

Section 1982 provides that "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. § 1982; see also Johnston v. Apple Inc., No. 11 CIV. 3321, 2011 WL 4916305, at *2 (S.D.N.Y. Oct. 14, 2011) ("To state a claim for relief under section 1982, a plaintiff must allege that he was intentionally 'deprived of a property right' because of his race.") (citation omitted).

### a. Vandewater

Vandewater argues that Plaintiffs' § 1982 claim against him must be dismissed because Plaintiffs have not alleged that Vandewater interfered with Plaintiffs' ability to contract for or exchange property. Vandewater Mem. at 11. Plaintiffs neither responded directly to Vandewater's argument, nor have they asserted which property right has allegedly been infringed upon. See

generally Resp. Vandewater; see also Supp. Compl. ¶ 117. Rather, Plaintiffs merely allege in conclusory terms that Vandewater "interfere[d] with the use and enjoyment of Plaintiffs' property." Resp. Vandewater at 20.

Plaintiffs' failure to allege the deprivation of a specific property right beyond mere conclusory allegations is alone sufficient to grant summary judgment in favor of Vandewater. Moreover, Plaintiff has provided no authority—and the Court is aware of none—that § 1982 protects an individual's right to "use and enjoyment" of her property free from interference by private actors. Indeed, "§ 1982 bars only intentional discrimination in the lease of property and other property-related *transactions*." Allen v. Roth, No. 08 CIV. 6503, 2009 WL 3076105, at *5 (S.D.N.Y. Sept. 25, 2009) (emphasis added). Therefore, Vandewater is entitled to summary judgment on Plaintiffs' § 1982 claim.

### b. Falter and Wilson

Falter and Wilson argue that Plaintiffs' § 1982 claim against them should be dismissed because: (1) the allegations fail to establish any discriminatory intent; and (2) the allegations do not concern one of the enumerated activities in the statute. FW Mem. at 10-11. Plaintiffs respond that Falter and Wilson discriminated against them for associating with an African-American minor by constructing the steel cables across Plaintiffs' right of way, swerving their vehicle at Plaintiffs, and directing racial epithets at them, and that such conduct "interfered with their right to use and enjoy the Plaintiffs' property." Resp. FW at 6. Although the factual allegations against Falter and Wilson are slightly different than those against Vandewater, Plaintiffs allege the identical deprivation of their right to use and enjoy their property. See id. As stated *supra*, the alleged acts of harassment based on race, while certainly deplorable, are not properly suited under § 1982. Accordingly, Falter

and Wilson are entitled to summary judgment on Plaintiffs' § 1982 claim.

### c. Rose

Rose similarly argues that Plaintiffs' § 1982 claim against him fails to allege a deprivation of one of the enumerated activities in the statute. Rose Mem. at 30-33. For the reasons stated *supra* dismissing Plaintiffs' § 1982 claims for failure to allege the deprivation of a specific property right protected by § 1982, Plaintiffs' claim against Rose is dismissed.

### 7. *New York Civil Rights Law § 40-c*

New York Civil Rights Law § 40-c provides that "[n]o person shall, because of race, creed, color, national origin, sex, marital status, sexual orientation or disability . . . be subjected to any discrimination in his or her civil rights, or to any harassment . . . by any other person or by any firm, corporation or institution, or by the state or any agency or subdivision of the state." Furthermore, § 40-d provides that "[a]t or before the commencement of any action under this section, notice thereof shall be served upon the attorney general."

Vandewater, Rose, and Falter and Wilson all argue that they are entitled to summary judgment on Plaintiffs' § 40-c claims because Plaintiffs failed to properly serve notice on the attorney general. See Vandewater Mem. at 10; Rose Mem. at 34; FW Mem. at 8. Plaintiffs did not respond to these arguments or provide any evidence that they satisfied the notice requirement. See generally Resp. Vandewater; Resp. Rose; Resp. FW. Dismissal of Plaintiffs' § 40-c claims against Vandewater, Rose, and Falter and Wilson is therefore warranted. See Barmore, 419 F. Supp. 2d at 201-02; see also L.R. 7.1(b)(3).

8. *Loss of Consortium*

a. Vandewater

"A loss of consortium claim is a derivative action that depends on the viability of the primary cause of action" or "the underlying injury." Reed v. Medford Fire Dep't, Inc., 806 F. Supp. 2d 594, 606 (E.D.N.Y. 2011). Vandewater argues that if the underlying claims against him are dismissed, then Plaintiffs' loss of consortium claim must also be dismissed. Vandewater Mem. at 11-12. Alternatively, Vandewater argues that even if one of the underlying claims against him survives, the loss of consortium claim must be dismissed because it is not available: (1) in connection with civil rights violations; (2) in the absence of physical injury to the spouse; or (3) to a parent for loss of a child in a personal injury case. Id. at 12. Plaintiffs do not respond directly to these arguments. See generally Resp. Vandewater. Rather, Plaintiffs assert that Mrs. Hogan has suffered loss of her husband's support, services, and love and companionship as a result of Mr. Hogan having to attend criminal proceedings in New York that were initiated by Defendants. Id. at 22.

The Court finds that Plaintiffs' failure to demonstrate a physical injury sustained by Mr. Hogan is fatal to their claim of loss of consortium on behalf of Mrs. Hogan. See Tedeschi v. Smith Barney, Harris Upham & Co., 548 F. Supp. 1172, 1176-77 (S.D.N.Y. 1982) (dismissing loss of consortium claim where husband became "ill, sick, nervous, irritable and unstable" because "there [wa]s no allegation of physical injury to her husband"); see also Collins v. Willcox, Inc., 600 N.Y.S.2d 884, 885-87 (Sup. Ct. 1992) ("There is no physical injury in this case, serious or otherwise. Accordingly, there being no such allegation of physical injury in the complaint, the fourth cause of action [loss of consortium] is insufficient as a matter of law and partial summary judgment

is granted dismissing same."). Accordingly, Vandewater is entitled to summary judgment on Plaintiffs' loss of consortium claim.

### b. Falter and Wilson

Falter and Wilson argue that Plaintiffs' loss of consortium claim against them must be dismissed because, *inter alia*, Plaintiffs have failed to provide any evidence of a physical injury. FW Mem. at 7. Plaintiffs did not respond. See generally Resp. FW. Thus, for the reasons stated *supra* finding that Plaintiffs must allege a physical injury sustained by Mr. Hogan to prevail, Falter and Wilson are granted summary judgment on Plaintiffs' loss of consortium claim.

### c. Rose

Rose, on the other hand, argues exclusively that he is entitled to summary judgment on Plaintiffs' loss of consortium claim because it is a derivative claim and, in the event all other claims against Rose are dismissed, so too should the loss of consortium claim. Rose Mem. at 35. However, the Court has not dismissed Plaintiffs' private nuisance claim against Rose, and therefore Rose has failed to demonstrate his entitlement to judgment as a matter of law on Plaintiffs' loss of consortium claim.

### 9. Supplemental Jurisdiction

Finally, Falter and Wilson argue that if the federal claims against them are dismissed, the Court should decline to exercise supplemental jurisdiction over any remaining state law claims against them. FW Mem. at 11-12 (citing 28 U.S.C. § 1367). Plaintiffs respond that even if the federal claims are dismissed, the Court still possesses subject matter jurisdiction because there is complete diversity among the parties and the amount in controversy exceeds the statutory requirement. Resp. FW at 7 (citing 28 U.S.C. § 1332). Only Plaintiffs' private nuisance claim

against Falter and Wilson remains. Before addressing whether the Court may exercise supplemental jurisdiction, it first considers whether diversity jurisdiction exists independently of the federal causes of action.

The Supplemental Complaint indicates that Plaintiffs are all residents of Virginia, and all Defendants reside in New York. Supp. Compl. ¶¶ 9-18. Thus, complete diversity exists among the parties, satisfying the first requirement under 28 U.S.C. § 1332. See Herrick Co. v. SCS Commc'ns, Inc., 251 F.3d 315, 322 (2d Cir. 2000).

With respect to the amount in controversy, the burden of meeting this requirement is "hardly onerous . . . for we recognize a rebuttable presumption that the claim is in excess of the statutory jurisdictional amount." Scherer v. Equitable Life Assurance Soc'y of U.S., 347 F.3d 394, 397 (2d Cir. 2003). Moreover, the moving party need show only "a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount." United Food & Comm'l Workers Union v. Centermark Props. Meriden Square, Inc., 30 F.3d 298, 304-05 (2d Cir. 1994) (citation omitted). In assessing the amount in controversy, the district court should first look to the complaint. See Samuels v. Elrac, Inc., No. 06-CV-5345, 2006 WL 2862337, at * 1 (E.D.N.Y. Oct. 5, 2006).

Here, the Supplemental Complaint indicates that Plaintiffs seek $15,000,000 in damages. Supp. Compl. ¶¶ 9-18, 123. Although that demand includes all Defendants, and with respect to Falter and Wilson only Plaintiffs' private nuisance claim remains, Falter and Wilson have not argued that Plaintiffs have failed to meet the amount in controversy requirement. Accordingly, Plaintiffs have met their burden in demonstrating that diversity jurisdiction exists. The Court therefore need not determine whether it would be proper to exercise supplemental jurisdiction over the remaining state law claims against Falter and Wilson.

31

**B.  The Lewis County Defendants**

*1.  § 1983 Municipal Liability*

Plaintiffs have alleged a § 1983 municipal liability claim against the Lewis County

Defendants for failure to properly train and supervise Lehman and Croneiser, leading to abuse of

process against Mr. Hogan.  <u>See</u> Mar. Order at 17.  "[T]o prevail on a claim against a municipality

under Section 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions

taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4)

damages; and (5) that an official policy of the municipality caused the constitutional injury."  <u>Roe v.</u>

<u>City of Waterbury</u>, 542 F.3d 31, 36 (2d Cir. 2008).

An abuse-of-process claim can give rise to liability under § 1983.  <u>Savino v. City of New</u>

<u>York,</u> 331 F.3d 63, 766-67 (2d Cir. 2003).  "In New York, a malicious abuse-of-process claim lies

against a defendant who (1) employs regularly issued legal process to compel performance or

forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order

to obtain a collateral objective that is outside the legitimate ends of the process."  <u>Cook v. Sheldon</u>,

41 F.3d 73, 80 (2d Cir. 1994); <u>see also</u> <u>PSI Metals, Inc. v. Firemen's Ins. Co. of Newark, N.J.</u>, 839

F.2d 42, 43 (2d Cir. 1988); <u>Zarro v. Spitzer</u>, No. 06-CV-1166, 2009 WL 3165761, at *6 (N.D.N.Y.

Sept. 25, 2009).  "In New York, such wrongful purposes have included economic harm, extortion,

blackmail, and retribution."  <u>Ketchuck v. Boyer</u>, No. 10-CV-0870, 2011 WL 5080404, at *7

(N.D.N.Y. Oct. 25, 2011) (quotation marks omitted).

The County Defendants argue that Plaintiffs' abuse of process claim must be dismissed

because: (1) Mr. Hogan has failed to demonstrate any abuse of process *after* process was initiated;

and (2) Plaintiffs have failed to demonstrate a collateral objective.  Dkt. No. 176-26 ("Lewis County

Memorandum") at 5-7.

"It is undisputed that an abuse of process claim may only be based on events subsequent to initiation." Miles v. City of Hartford, 445 F. App'x 379, 383 (2d Cir. 2011). Plaintiffs allege that the following six acts occurred subsequent to Mr. Hogan's arrest "as a means to attempt to coerce Mr. Hogan and his family into leaving the area": (1) Croneiser handcuffed Mr. Hogan so tightly that he suffered a broken wrist; (2) Croneiser stated at the time of arrest "if I was you, I would sell the cabin and go somewhere else," which was, in substance, repeated thereafter by Lehman and Petzoldt; (3) the Lewis County Defendants issued a press release in the local newspaper stating that Mr. Hogan had been arrested; (4) the Lewis County Defendants continued to "press baseless charges"; and (5) the Lewis County Defendants refused to issue process against the Hogans' neighbors. Dkt. No. 203 ("Response to Lewis County") at 4-6. The Court addresses each allegation in turn.

As to Mr. Hogan's claim that he suffered a broken wrist when Croneiser handcuffed him, the Court agrees with the Lewis County Defendants that Mr. Hogan's claim is unsupported by any facts in the record. See Dkt. No. 227 ("Lewis County Reply") at 2. Despite lengthy discovery in this case, Mr. Hogan has not produced any medical evidence of an injured, let alone, broken wrist to substantiate his claim.

With respect to the Lewis County Defendants' statements that it was "open season" on the Hogans and that the Hogans should just sell their cabin and move, such allegations may be relevant to finding a collateral objective; however, they do not constitute an abuse of legal *process*. See Gilman v. Marsh & McLennan Cos., Inc., 868 F. Supp. 2d 118, 133 (S.D.N.Y. 2012) (dismissing abuse of process claim where, in relevant part, plaintiffs failed to alleged that defendants "used

process against [p]laintiffs in any legal sense").

Concerning the Lewis County Defendants' issuance of a press release following Mr. Hogan's arrest, the Lewis County Defendants have provided evidence, which Plaintiffs have not disputed, that "it is the Lewis County Sheriff's Department's regular practice to issue press releases when an individual has been arrested." Lewis Cnty. Reply at 2. Plaintiffs have not provided any argument or authority to suggest that this automatic, non-discretionary practice following all arrests constitutes an "abuse" of process.

As to Plaintiffs' allegation that the Lewis County Defendants continued to "press baseless charges," the Court stated in the March Order that "Defendants Lehman and Croneiser possessed probable cause to arrest [Mr. Hogan]," which was supported by "photographs, sworn complaints, and actual physical evidence demonstrating that Mr. Hogan had taken the steel cables and sawhorses." Mar. Order at 12-13. Plaintiffs have not set forth any additional facts or arguments to establish that the charges were "baseless."

Finally, with respect to Plaintiffs' claim that the Lewis County Defendants issued process against Mr. Hogan but refused to do so against his neighbors, this claim is irrelevant. Even if it were true that Croneiser and Lehman unlawfully refused to arrest Plaintiffs' neighbors, such a finding would not demonstrate that legal process was abused as against *Mr. Hogan*, since it is unrefuted that they possessed probable cause to arrest him. Plaintiffs' argument is one of disparate treatment, which is more properly suited under an equal protection claim, discussed *infra*.

Accordingly, Plaintiffs have failed to show that the Lewis County Defendants abused legal process against Mr. Hogan subsequent to his arrest. Because there is no underlying abuse of process by Lehman and Croneiser, Plaintiffs cannot prevail on their claim of municipal liability against the

Lewis County Defendants pursuant to § 1983. Therefore, the Lewis County Defendants are entitled to summary judgment on Plaintiffs' § 1983 municipal liability claim.

### 2. Common Law Abuse of Process

The Lewis County Defendants argue that for the same reasons the § 1983 municipal liability claim must be dismissed, Plaintiffs' common law abuse of process claim must likewise be dismissed. Lewis Cnty. Mem. at 10. Plaintiffs respond that a different standard applies under New York law—namely, that employers can be held liable for the wrongful acts of their employees under the doctrine of *respondeat superior*. Resp. Lewis Cnty. at 10 (citing Cunningham v. Petrilla, 817 N.Y.S.2d 468 (2006)). Without determining Plaintiffs' assessment of the legal standard, the Court notes that Cunningham concerned a claim for negligence, not abuse of process, and therefore is inapplicable. Id. at 486. Morever, even if Plaintiffs' assertion were true, as stated *supra*, they have still failed to demonstrate an underlying abuse of process that would give rise to supervisory liability. Accordingly, the Lewis County Defendants are entitled to summary judgment on Plaintiffs' common law abuse of process claim.

### 3. § 1983 Conspiracy

In order to make out a conspiracy claim under § 1983, "a plaintiff must demonstrate (1) an agreement between two or more state actors or a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Graham v. City of Albany, No. 08-CV-892, 2009 WL 4263510, at *12 (N.D.N.Y. Nov. 23, 2009) (citing Ciambriello v. Cnty. of Nassau, 292 F.3d 307, 324-25 (2d Cir. 2002)); see also Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 119 (2d Cir. 1995) ("[A] plaintiff alleging a § 1983 conspiracy claim must prove an actual violation of constitutional rights.").

Plaintiffs allege that the Lewis County Defendants conspired to deny Plaintiffs' equal protection rights under the Fourteenth Amendment by refusing to file criminal complaints from Mr. Hogan against his neighbors, but agreeing to accept Mr. Hogan's neighbors' complaints against him. Supp. Compl. ¶¶ 112-14. The Lewis County Defendants argue that this claim must be dismissed because Plaintiffs have failed to demonstrate: (1) a conspiracy by the Lewis County Defendants to deprive Plaintiffs of any constitutional rights; and (2) that they were subjected to any form of disparate treatment. Lewis Cnty. Mem. at 11-14.

The Court considers the Lewis County Defendants' second argument first. In the March Order, the Court found that "Plaintiffs articulate a theory of selective enforcement, arguing that they were similarly situated to their neighbors against whom they had filed criminal complaints, but that the Lewis County Defendants pursued only the criminal complaints against Mr. Hogan." Mar. Order at 19-20.[7]

A plaintiff may bring an equal protection claim based on a selective enforcement theory by demonstrating that "(1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." LeClair v. Saunders, 627 F.2d 606, 609-10 (2d Cir. 1980). The discrimination must be intentional or purposeful. Id. at 609 (citations omitted).

---

[7] The Court denied the Lewis County Defendants' First Motion for summary judgment on Plaintiffs' § 1983 equal protection claim out of an abundance of caution because the Motion was filed before discovery had been conducted. See Mar. Order at 22. However, the Court notes that Plaintiffs' theory of liability has not changed. See Resp. Lewis Cnty. at 15-18.

Determining whether parties are similarly situated is typically "a fact-intensive inquiry." Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 499 n.2 (2d Cir. 2001). However, "[a] court may grant summary judgment in a defendant's favor on the basis of lack of similarity of situation . . . where no reasonable jury could find that the persons to whom the plaintiff compares [herself] are similarly situated." Clubside, Inc. v. Valentin, 468 F.3d 144, 159 (2d Cir. 2006). At the summary judgment stage, "a plaintiff must present evidence comparing herself to individuals that are 'similarly situated in all material respects.'" Sebold v. City of Middletown, No. 05 Civ. 1205, 2007 WL 2782527, at *26 (D. Conn. Sept. 21, 2007) (quoting Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000)); see also Lamothe v. Town of Oyster Bay, No. 08-CV-2078, 2012 WL 6720781, at *7 (E.D.N.Y. Dec. 27, 2012); Mangino, 739 F. Supp. 2d at 254 ("To make it past the summary judgment stage on a selective enforcement equal protection claim, it is plaintiffs' burden to demonstrate similarly situated individuals who were treated differently.").

Plaintiffs reference a number of instances in support of their claim for selective enforcement. Resp. Lewis Cnty. at 17-18. The Court addresses each allegation in turn.

First, Plaintiffs allege that "[w]hen [Mr. Hogan] requested the criminal process be invoked in April 2010 against [D]efendants Falter and Wilson, Defendants Lehman and Croneiser threatened [Mr. Hogan] with arrest and suggested that he should just sell everything and find some other place to go." Id. at 17. While Plaintiffs' allegation may suggest an improper motive or intent, it fails to suggest that Lehman and Croneiser improperly refused to press charges against Falter and Wilson. In other words, whereas Lehman and Croneiser possessed clear probable cause to arrest Mr. Hogan, as discussed *supra*, Plaintiffs have failed to show how Falter and Wilson were similarly situated in April 2010.

Next, Plaintiffs allege that Mr. Hogan sent an email to Moser on April 29, 2010, requesting that charges be brought against Wilson and Falter; yet, Moser informed Plaintiffs (incorrectly) that the statute of limitations had run. Id. However, Plaintiffs do not explain what the underlying charges were, or the date of incident, to support their contention that Moser falsely informed them that the statute of limitations had run. See id.

Mr. Hogan further asserts that, in May 2010, he "asked [D]efendants Lehman and Croneiser to make arrests for blocking his easement and unlawful imprisonment." Id. As stated *supra*, there exists a triable issue of fact with regards to the location of the easement; thus, it is not clear that, even if Plaintiffs' allegations are true, that Lehman and Croneiser had probable cause to arrest Mr. Hogan's neighbors. Moreover, Plaintiffs argue only in conclusory fashion that Lehman and Croneiser refused to "make arrests," but Plaintiffs do not specify *who* Lehman and Croneiser refused to arrest. Similarly, Plaintiffs have provided no facts surrounding the circumstances of the alleged unlawful imprisonment to suggest selective enforcement.

Plaintiffs next allege that, on July 5, 2010, Croneiser informed Plaintiffs that he could not arrest the Wests for trespassing, because Moser, the District Attorney for Lewis County, informed Croneiser that there was no probable cause to arrest the Wests. Id. As stated *supra* and in the March Order, the Court has already determined that Croneiser and Lehman possessed probable cause to arrest Mr. Hogan for petit larceny. However, Plaintiffs have not provided any facts to suggest, let alone demonstrate, that Croneiser and Moser declined to press charges against the Wests in the face of clear probable cause, nor that the Wests were similarly situated to Mr. Hogan concerning their respective charges. See Resp. Lewis Cnty. at 17-18.

Plaintiffs' final allegation concerns a complaint made to the New York State police.  See id. at 18.  However, Plaintiffs' equal protection claim is alleged only against the Lewis County Defendants, and therefore any activity concerning the state police is irrelevant.

In sum, Plaintiffs have failed to demonstrate that they were similarly situated to their neighbors in all material respects.  Moreover, as the Lewis County Defendants correctly point out, "the Lewis County Sheriff's Department responded to at least four of Plaintiff Hogan's complaints between August 2008 and Summer 2010 (including his complaint on July 5, 2010, which was just weeks after Hogan alleges Lehman advised him the Sheriff's Department was directed to refuse Hogan's complaints)."  Lewis Cnty. Mem. at 15.  Therefore, Plaintiffs have also failed to demonstrate that the Lewis County Defendants refused to respond to their complaints yet responded to their neighbors' complaints.  Accordingly, Plaintiffs have failed to establish a triable issue of fact regarding selective enforcement, and the Lewis County Defendants are entitled to summary judgment on Plaintiffs' § 1983 equal protection claim.

V.      **CONCLUSION**

Accordingly, it is hereby:

**ORDERED**, that Defendant David Vandewater's First Motion (Dkt. No. 171) for summary judgment is **GRANTED in part and DENIED in part** consistent with this Memorandum-Decision and Order; and it is further

**ORDERED**, that all claims against Defendant David Vandewater except for Plaintiffs' interference with easement and private nuisance claims are **DISMISSED**.; and it is further

**ORDERED**, that Defendants Russell Falter and Kathy Wilson's Second Motion (Dkt. No. 174) for summary judgment is **GRANTED in part and DENIED in part** consistent with this

Memorandum-Decision and Order; and it is further

**ORDERED**, that all claims against Defendants Russell Falter and Kathy Wilson except for Plaintiffs' private nuisance claim are **DISMISSED**; and it is further

**ORDERED**, that Defendants County of Lewis, New York; Ryan Lehman; Brett Croneiser; Leanne Moser; and Caleb Petzoldt's Motion (Dkt. No. 176) for summary judgment is **GRANTED**; and it is further

**ORDERED**, that all claims against Defendants County of Lewis, New York; Ryan Lehman; Brett Croneiser; Leanne Moser; and Caleb Petzoldt are **DISMISSED**; and it is further

**ORDERED**, that Defendant Frank Rose's Motion (Dkt. No. 177) for summary judgment is **GRANTED in part and DENIED in part** consistent with this Memorandum-Decision and Order; and it is further

**ORDERED**, that all claims against Defendant Frank Rose except for Plaintiffs' private nuisance and loss of consortium claims are **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**


DATED:      March 26, 2015
            Albany, NY

Lawrence E. Kahn
U.S. District Judge